1
2
3
4
5
6
7
8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BUCK BOSWELL,

11              Petitioner,                    2: 10 - cv - 1076 - GEB TJB

12        vs.

13   ANTHONY HEDGPETH,

14              Respondent.           ORDER, FINDINGS AND

15                                    RECOMMENDATIONS

16   _____/

17                        I.  INTRODUCTION

18        Petitioner, Buck Boswell, is a state prisoner and is proceeding *pro se* with a petition for

19   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving a sentence of

20   twenty-two years after being found guilty by a jury of possession of methamphetamine for sale,

21   sale of methamphetamine, maintaining a place for the sale or use of methamphetamine,

22   possession of marijuana for sale and possession of methamphetamine while armed with a loaded

23   firearm.  Petitioner raises several claims in his federal habeas petition; specifically:  (1)

24   ineffective assistance of counsel at Petitioner's suppression hearing ("Claim I"); (2) false

25   evidence was used to convict Petitioner ("Claim II"); (3) the prosecutor failed to disclose

26   evidence to the defense ("Claim III"); (4) the prosecutor denied Petitioner reciprocal discovery

("Claim IV"); (5) the State destroyed exculpatory evidence ("Claim V"); (6) outside aspects of

Petitioner's trial improperly influenced the jury ("Claim VI"); (7) Petitioner's conviction resulted

from uncorroborated accomplice testimony ("Claim VII")[1]; (8) trial court error in failing to

instruct the jury that two witnesses were accomplices as a matter of law ("Claim VIII"); (9)

prosecutorial misconduct ("Claim IX"); (10) ineffective assistance of counsel at trial ("Claim

X"); (11) ineffective assistance of appellate counsel ("Claim XI"); and (12) Petitioner was

improperly sentenced to the upper term on his convictions ("Claim XII").  For the following

reasons, Petitioner's federal habeas petition should be denied.

## II. FACTUAL BACKGROUND[2]

> On November 12, 2005, codefendant Susan Ray-Bailey rented room 413 at the Holiday Inn Express in Corning.  She paid cash each day.  She refused maid service, stating her husband was ill.  The manager noticed about 15 visitors to the room over the course of four or five days.

> Law enforcement officers (the Tehama and Glenn County Methamphetamine team or TAGMET) received information of possible drug activity in room 413.

> On November 16, 2005, TAGMET conducted surveillance of room 413 from 9:00 a.m. to 1:00 p.m.  The officers did not see defendant.  They saw three people leave the room, one of which they recognized as John Osbourne, who was known to frequent locations associated with narcotics but who had never been arrested in Corning for drug offenses.  Osbourne left the room about 9:30 a.m. and went to a car in the parking lot.  A man in the car removed a two-foot by two-foot metal box.  Osbourne, unable to fit the box into a backpack, moved the contents of the box into the backpack and returned to room 413.  In addition to Osbourne, two females visited the room and stayed less than 30 minutes.  Shortly after hotel staff saw Osbourne in the hotel laundry room, a

---

[1] The petition listed ground seven as "accomplice statement uncorroborated" and ground eight as conflict on accomplice status.  For purposes of this opinion, these two grounds will be analyzed together as in both Petitioner asserts that his due process and fair trial rights were violated when he was convicted based on uncorroborated statements of an accomplice.

[2] The factual background is taken from the Court of Appeal of the State of California, Third Appellate District opinion filed in Petitioner's direct appeal dated August 21, 2007 and filed by Respondent in this Court as Exhibit A to his answer on October 27, 2010 (hereinafter the "Slip Op.")

hotel guest complained of finding marijuana stems and leaves in the laundry room dryer.  However, an officer who went to check found nothing.

TAGMET tried to use an informant to make an undercover buy from room 413, but the informant was unable to gain access to the room.

Police obtained a search warrant, entered room 413, and found defendant, codefendant Carrie Smith, and Carrie Moon.  The officers found 51.7 grams of methamphetamine, individually packaged (about 500 doses), plus 157.6 grams of marijuana, hypodermic needles, methamphetamine smoking pipes, two scales, drug packaging materials, a calculator, $4,453 in cash, a notebook of encrypted notations, four police scanners, a notebook listing police radio frequencies, several cellular telephones, a loaded .357 magnum revolver, a .9 millimeter semi-automatic gun with four 15-round clips, and other caliber ammunition.  The .9 millimeter gun was in plain sight on top of the coffee table.  The revolver was in a drawer.  The officers also observed surveillance equipment in the room – video cameras aimed out the windows, a monitor, binoculars, and night vision goggles.  There were no women's clothes in the room, only menswear.

Moon initially told an officer that she was there to return some videos or DVDs.  She then said that methamphetamine found in her purse was hers, and she got it from defendant with an understanding that he would be compensated in some way.  She also had a glass pipe in her purse.

Smith had methamphetamine in her purse but denied possessing any other items found in the room.  Her purse contained keys to a van parked in the hotel parking lot and keys to a metal safe in the van.  The metal safe contained marijuana, methamphetamine, and syringes.

Other than his presence, nothing connected defendant to the room or van or anything found in the room or van.

In the parking lot, the police saw and questioned Ray-Bailey, who said she rented the room but denied knowledge of any illegal items.  When the officer asked what percentage of her statements were true, she indicated about 90 percent.

The officer testified to his opinion that the narcotics were possessed for sale and the hotel room was being used to distribute drugs.

At trial, Moon testified she went to room 413 to return DVDs her cousin had borrowed.  She testified she pled guilty to felony possession of the methamphetamine in her purse.  She denied

3

buying the drugs from defendant and denied telling the officer that she bought the drugs from defendant.  She testified she spoke with defendant by phone on her way to the hotel, and he said he was there waiting for a ride to Redding.  Moon admitted she did not want to testify but denied telling her probation officer that she had been threatened.

Defendant Ray-Bailey presented her "defense" case.  No incriminating items were found on her person or in her vehicle.  She testified (in narrative form) that she had a bad methamphetamine habit and was having marital problems when she rented the hotel room to store property she planned to sell to raise money to move back to Texas.  The men's clothing belonged to her husband.  She bought guns at a flea market.  She traded drugs for equipment she could sell to raise money.  None of the items in the hotel room belonged to defendant.  The drugs were hers.  She did not obtain any drugs from defendant.

Ray-Bailey said she lied when she told the police that she agreed to rent the room for defendant and provide him food and laundry services, ostensibly because he was a client of her in-home supportive services business.  She told the police that she was "in and out" of the room and set up defendant's computer equipment, which she thought was work-related to his construction business.  She testified defendant was not staying in the room but, because he was there during the police raid, she told the police that he was staying in the room.  When asked on cross-examination if she was afraid of defendant, Ray-Bailey said no.  She said she lied to the police because she was scared.

Defendant then put on his defense case.  An officer testified room 413 does not look out onto the parking lot, but rather South Avenue and Interstate Highway 5 (which assertedly diminished the usefulness of the room as a place for distribution of drugs).  John Osbourne testified there were no males in room 413 during any of his visits, including the day of the raid.  Osbourne went to the room that day to bring Ray-Bailey a safe for her to keep property, but the safe was too bulky to carry up the stairs.  Osbourne was arrested that day and was convicted of possessing a deadly weapon and methamphetamine.

(Slip Op. at p. 3-7.)

### III.  PROCEDURAL HISTORY

Prior to trial, Petitioner's trial counsel filed a motion to unseal the search warrant affidavit, to quash the search warrant and to suppress the evidence seized during the raid on the hotel room.  (See Clerk's Tr. at p. 41-60.)  In that motion, Petitioner argued that the search

1    warrant should be unsealed to protect Petitioner's due process rights to discovery.  (See id. at p.

2    45.)  Petitioner also argued that the evidence obtained via the search warrant should be

3    suppressed because the search warrant was not supported by probable cause.  (See id. at p. 45-

4    47.)  Finally, Petitioner argued that the police's knock and announce was inadequate.  (See id. at

5    p. 47-49.)

6         On January 23, 2006, the state court conducted a People v. Hobbs, 7 Cal. 4th 948, 30 Cal.

7    Rptr. 2d 651, 873 P.2d 1246 (1994) hearing regarding the confidentiality of the informant's

8    identity.  Subsequently, the state court found that there was a reasonable likelihood that a motion

9    to suppress might be granted and ordered that the confidential portion of the search warrant be

10   disclosed and opened.  (See Clerk's Tr. at p. 95.)

11        On February 10, 2006, Petitioner filed supplemental points and authorities in support of

12   his motion to quash and traverse the warrant and to suppress evidence.  (See id. at p. 75-92.)

13   Petitioner also attached an affidavit from Osbourne to his supplemental points and authorities.

14   (See id. at p. 84-85.)  Petitioner argued in his supplemental filing that the attached Osbourne

15   affidavit contradicted portions of the search warrant.  (See id. at p. 77.)  He further argued that

16   Osbourne's affidavit thereby created a lack of "independent corroboration to the third hand

17   assertions of the untested confidential informant."  (See id.)  Counsel also asserted that the

18   information from an untested confidential informant was uncorroborated and therefore was

19   insufficient to find probable cause for the search warrant.  (See id. at p. 78-79.)  Additionally,

20   Petitioner's counsel asserted that a reasonable law enforcement officer could not harbor a good

21   faith reliance on a search warrant so lacking in indicia of probable cause.  (See id. at p. 80-82.)

22        On February 16, 2006, the state court conducted a hearing on the motion to quash the

23   search warrant and to suppress evidence.  (See Reporter's Tr. at p. 51-114.)  Ultimately, the state

24   court found as follows:

25          [A] general outline is we do not have an anonymous informer.   We
            have an informer who has previous contacts, that is the information
26          that was just unsealed as to that informer . . . .

5

What the informant heard was a conversation with someone named Buck about a drug buy then in conversation asked and was told Buck was at 413 and room 413 in the Holiday Inn.  There was conversation about there being a pound of crystal meth there and possible guns there and that this person had purchased before.  Further, the informant I think it is with Ms. Weilmunster . . . . I don't know if that is the way to pronounce it and they put her in a control situation that is while they put a monitor on her after talking with Cadotte.  They gave her money.  She took that money and give it to Ms. Cadotte.  They then drove together and Ms. Cadotte took evasive action at the time, which by itself is not, a lot of these facts by themselves are not probable cause but I am adding them together.  She took evasive action while going down to the hotel.  Why they did drop the informant off, the money was exchanged, the officers watched her go into the Holiday Inn.  She returned with the drugs.  She showed the drugs to the informant.  This is all on a taped encounter.

Switching over to what was happening in a parallel scene, people working with the Red Bluff Police Department and TAGMET, specifically including Officer Norwood had the Holiday Inn under surveillance, specifically room 413.  They determined that the guest in 413 who is one of these defendants was registered there, that that guest was receiving calls and visitors in excess of normal, what would be normal.  The guest also was found to live in Corning on Fig Avenue.  I am not required to block out of my mind the fact that I work in Corning everyday and that means that this guest at 413 in the Holiday Inn was renting a room from just a short drive from where she lived.  This is known to be a drug practice and so stated or sales practice.  They then saw a John Osbourne exit room 413, they know him to be a person who frequents places where drugs are and are being sold.  They see him walking to the parking lot and contact another male removing a large safe from the truck attempting to get it into a canvas bag, ultimately unable to do that removing the contents and putting them in a bag.  They are looking nervous, looking around, attempting to conceal their stuff and then go back to 413 and the officer believes this is part of drug traffic.

On that day, I believe it was 9:43, defendant Bailey exited room 413 and went to the front desk where she renewed for a night and made an unusual request that she did not want anyone in that room quote and got her own bed sheets.  That is another fact by itself not probable cause but certainly consistent with the observations and conclusions drawn by the officer.

Furthermore, we have staff reports that Osbourne was in the laundry room and he was there.  45 minutes later, the guests were complaining of the smell of marijuana and they found marijuana seeds and stems from where he had been in the laundry room.

1          And when you add all of these things together I am finding that
           there was probable cause and I am denying that portion of the
2          motion.

3    (Reporter's Tr. at p. 67-69.)

4         After Petitioner was convicted and sentenced by the trial court, he appealed to the

5    California Court of Appeal.  Among the issues that Petitioner raised in his direct appeal were the

6    following:  (1) the search warrant affidavit incorporating by reference an unsworn statement of

7    probable cause violated the Fourth Amendment; (2) there was a lack of corroboration with

8    respect to the accomplice testimony; (3) the trial court erred in failing to instruct the jury that

9    Ray-Bailey and Moon were accomplices as a matter of law; (4) prosecutorial misconduct by

10   using an unsupported insinuation that Moon and Ray-Bailey were afraid of Petitioner; (5)

11   prosecutorial misconduct during closing argument; (6) the Petitioner had the right to be present

12   during re-sentencing; and (7) the imposition of the upper term in sentencing Petitioner violated

13   the Sixth Amendment.  The California Court of Appeal affirmed the judgment on August 21,

14   2007.  Next, Petitioner filed a petition for review to the California Supreme Court.  The

15   California Supreme Court summarily denied the petition for review on November 14, 2007.

16        Petitioner filed a petition for writ of habeas corpus in the Tehama County Superior Court

17   on November 18, 2008.  Petitioner raised twenty claims in that state habeas petition; specifically,

18   Petitioner asserted the following:  (1) evidence used to convict Petitioner was the product of an

19   unconstitutional search and seizure (argument 1); (2) evidence used to convict Petitioner was

20   seized on the basis of a facially invalid warrant (argument 2); (3) the suppression hearing judge

21   was not neutral (argument 3); (4) Petitioner's conviction resulted from the admission of

22   accomplice testimony that was uncorroborated (argument 4); (5) four claims of insufficiency of

23   the evidence (arguments 5 through 8); (6) Brady violation when the prosecutor failed to file a

24   report of Moon's exculpatory statement that she gave to the prosecutors (argument 9); (7) Brady

25   violation by failing to disclose exculpatory information provided to the prosecutors by Osbourne

26   (argument 10); (8) denial of reciprocal discovery (argument 11); (9) destruction of exculpatory

evidence (argument 12); (10) the prosecutor misrepresented the facts when he told the jury that only men's wear was found in the hotel room (argument 13); (11) hearsay/confrontation clause violation when the agent testified that the only clothes found in the hotel room were men's wear (argument 14); (12) co-defendant's confession improperly used (argument 15); (13) improper outside influences on the jury (argument 16); (14) prosecutorial misconduct (argument 17); (15) ineffective assistance of counsel (argument 18); (16) ineffective assistance of appellate counsel (argument 19); (17) the evidence that only men's wear was found in the hotel room which was used to convict Petitioner was false (argument 20).

In January 2009, the Superior Court issued a written decision denying the state habeas petition.  It denied arguments one, two, three, four, five, six, seven, eight, thirteen, fourteen, fifteen and seventeen by relying on People v. Senior, 33 Cal. App. 4th 531, 41 Cal. Rptr. 2d 1 (1995) and stating that these arguments could have been raised on direct appeal.  With respect to the remaining arguments, the Superior Court denied them as follows:

> Ground Nine:  The declaration of Defendant/Petitioner is not sufficient to establish the facts alleged.  Defendant/Petitioner has no personal knowledge regarding the allegations.  Simply including it in a petition is not sufficient.  Furthermore, even if the Court assumes that the allegations are true, the fact that the prosecution may have failed to disclose exculpatory evidence is not, in and of itself, sufficient to warrant relief.  For example, in this case, it is not at all clear from the petition that Defendant/Petitioner did not already know the information that Defendant/Petitioner alleges the prosecution failed to disclose at or before the time of trial.  If Defendant/Petitioner already knew the information, failure to disclose had no bearing on Defendant/Petitioner's right to a fair trial.  Finally, again assuming that the allegations are true, the allegations of the petition are insufficient for the Court to even conclude that the non-disclosed information was exculpatory.

> Ground Ten:  Evidently, the alleged *Brady* violation had to do with the issuance of a search warrant.  As such, it cannot be a "*Brady* violation," because such a violation bears upon exculpatory evidence.  The issuance of a search warrant has no relationship to guilt or innocence.  Furthermore, as an exhibit, there was included a declaration from a John Osbourne, which Defendant/Petitioner alleges supports his claim.  Since the declaration is dated February 9, 2006, it indicates that Defendant/Petitioner was aware of the facts allegedly withheld prior to the time of trial, and it further

8

indicates that this issue could have been raised on appeal.

Ground eleven is an allegation that reciprocal discovery was denied.  Assuming the allegation is true, failure of the prosecution to provide discovery, in and of itself, does not warrant issuance of either a writ, or an order to show cause.  The facts alleged in the petition are simply insufficient for the Court to determine what, if any, bearing this may have had on the ability of Defendant/Petitioner to present a defense at trial.

Ground twelve is an allegation that the prosecution destroyed exculpatory evidence, specifically what could have been women's clothing.  As Defendant/Petitioner points out, the exculpatory nature had to be evident at the time of its destruction.  Actually, this is not a case of destroying exculpatory evidence, it is a case more appropriately alleged as a failure to maintain exculpatory evidence.  The problem with the allegation is that whether or not it's exculpatory, taken all of the allegations in their best light would depend on whether, in fact, there was women's clothing that was observed by the officers.  The only evidence is that there was not.  The allegations of the petition merely allege that there could have been.  Such an allegation without any indication that, in fact, there was women's clothing that was not maintained as evidence is mere speculation and is insufficient to warrant relief.

Ground Sixteen:  Assuming the truth of the allegations, it is mere speculation what, if any, impact this may have had on members of the jury and, therefore, the allegations are insufficient to warrant relief.

Ground Eighteen:  All but one of the allegations are matters of record which could have been raised on appeal and, therefore, are procedurally barred.  The one allegation that is not is that defense counsel failed to do adequate investigation.  However, there is no evidence other than Defendant/Petitioner's mere claim not based upon any allegation of personal knowledge that, in fact, defense counsel failed to investigate.  Therefore, relief is not warranted.

Ground Nineteen:  Defendant/Petitioner alleges ineffective assistance of appellate counsel.  The recurring problem of allegations of this nature is that the trial court, specifically this Court, does not have a complete record of appellate court proceedings.  In other words, this Court does not know what arguments were made, or positions were taken by appellate counsel.  Mere allegations in the petition of what appellate counsel did, or did not do are simply not sufficient to warrant granting relief by way of a writ or order to show cause in this court.

Ground Twenty:  Generally speaking, whether evidence is true or false is for determination of the trier of fact in the trial court. Unless there is a demonstration in a petition for writ of habeas

9

1  corpus that any false evidence is such that it unerringly points to a
2  petitioner's innocence and undermines the entire case of the
   prosecution, it is insufficient to warrant writ relief.  [In re Weber
3  (1974) 11 Cal.3d 703, 724.]  The allegations of this petition do not
   meet that criteria.

4  (Resp't's Answer Ex. B at p. 2-4.)

5      Petitioner then filed a state habeas petition in the Court of Appeal which denied the

6  petition.  Petitioner then filed a state habeas petition in the California Supreme Court.  Petitioner

7  raised the twenty arguments he previously raised in the Superior Court along with two additional

8  arguments.  Specifically, Petitioner asserted in argument twenty-one that appellate counsel was

9  ineffective by failing to raise a confrontation clause argument when Moon's statement that she

10  made to police that she received the drugs from Petitioner was included at trial.  In argument

11  twenty-two, Petitioner argued that his counsel was ineffective at the suppression hearing.  The

12  California Supreme Court denied Petitioner's state habeas petition on January 13, 2010.

13      Petitioner subsequently filed the instant federal habeas petition.  Respondent answered

14  the petition on October 27, 2010.  On February 1, 2011, Respondent filed a traverse.

15          IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

16      An application for writ of habeas corpus by a person in custody under judgment of a state

17  court can only be granted for violations of the Constitution or laws of the United States.  See 28

18  U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v.

19  Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

20  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism

21  and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S.

22  320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim

23  decided on the merits in the state court proceedings unless the state court's adjudication of the

24  claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

25  clearly established federal law, as determined by the Supreme Court of the United States; or (2)

26  resulted in a decision that was based on an unreasonable determination of the facts in light of the

10

1    evidence presented in state court.  See 28 U.S.C. 2254(d).  Where a state court provides no

2    reasoning to support its conclusion, a federal habeas court independently reviews the record to

3    determine whether the state court was objectively unreasonable in its application of clearly

4    established federal law.  See Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).  When

5    no state court has reached the merits of a claim, de novo review applies.  See Chaker v. Crogan,

6    428 F.3d 1215, 1221 (9th Cir. 2005).

7           As a threshold matter, a court must "first decide what constitutes 'clearly established

8    Federal law, as determined by the Supreme Court of the United States.'"  Lockyer v. Andrade,

9    538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law'

10   under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court

11   at the time the state court renders its decision.'"  Id. (citations omitted).  Under the unreasonable

12   application clause, a federal habeas court making the unreasonable application inquiry should ask

13   whether the state court's application of clearly established federal law was "objectively

14   unreasonable."  See Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal court may

15   not issue the writ simply because the court concludes in its independent judgment that the

16   relevant state court decision applied clearly established federal law erroneously or incorrectly.

17   Rather, that application must also be unreasonable."  Id. at 411.  Although only Supreme Court

18   law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in

19   determining whether a state court decision is an objectively unreasonable application of clearly

20   established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only

21   the Supreme Court's precedents are binding . . . and only those precedents need be reasonably

22   applied, we may look for guidance to circuit precedents.").

V.  ANALYSIS OF PETITIONER'S CLAIMS

24          A.  Claim I

25          In Claim I, Petitioner raises multiple ineffective assistance of counsel claims arising out

26   of the suppression hearing.  Petitioner argues that counsel was ineffective by: (1) failing to read

the transcript of a hearing that was conducted to determine the identity of an informant pursuant to Hobbs, 7 Cal. 4th 948, 30 Cal. Rptr. 2d 651, 873 P.2d 1246, thereby prejudicing the Petitioner by failing to use the information in that transcript at the suppression hearing; (2) failing to object to the judge at the suppression hearing who was the same judge who issued the search warrant; (3) failing to argue that the drug enforcement agents did not know where Cadotte went in the hotel, what Cadotte showed the informant and where she got the stuff she showed the informant; (4) failing to argue that the informant could only hear Cadotte's side of a telephone conversation she had with an individual named "Buck"; (5) failing to move to exclude the sealed portion of the search warrant affidavit; (6) failing to argue that Osbourne was no longer in the subject hotel room because he had been detained and questioned by officers and that Osbourne offered statements to the agents that were helpful to Petitioner; (7) failing to object to agent's assertion that Osbourne frequents places associated with narcotics; (8) failing to investigate a videotape of Osbourne in the hotel parking lot; (9) failing to attack the assertion that an excessive number of visitors frequented the subject hotel room; (10) failing to bring to the court's attention that requesting linens and asking to not be disturbed at a hotel are not unusual requests; and (11) failing to raise issue to the court that Osbourne denied being in the laundry room.

Respondent argues in his answer that some of the arguments within Claim I are procedurally defaulted.   Specifically, he argues that Petitioner's arguments that his attorney failed to effectively cross-examine the drug agents at the suppression hearing (to the extent it is included within Claim I) was procedurally defaulted based on the Superior Court's ruling on Petitioner's state habeas petition.   Respondent also argues that two other arguments are procedurally defaulted within Claim I; specifically that the judge was biased and that counsel failed to raise the issue of where Cadotte went within the hotel.   These are the only three issues that Respondent argues are procedurally defaulted within Claim I.   However, in the interests if judicial economy, and because all of Petitioner's arguments within Claim I are without merit, the procedural default argument raised by Respondent within Claim I will not be addressed.

See Lambrix v. Singletary, 520 U.S. 518, 525 (1997); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.").

The Sixth Amendment guarantees effective assistance of counsel.  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating ineffective assistance of counsel.  First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  See id. at 688.  Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the range of professional competent assistance.  See id.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id.

Second, a petitioner must affirmatively prove prejudice.  See id. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine the confidence in the outcome."  Id.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, __ U.S. __, 131 S.Ct 770, 792, 178 L.Ed.2d 624 (2011).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (citing Strickland, 466 U.S. at 697).  When analyzing a claim for ineffective assistance of counsel where a state court has issued a decision on the merits, a habeas court's ability to grant the writ is limited by two "highly deferential" standards.  Premo v. Moore,

1   __ U.S. __, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011).  "When § 2254(d) applies the question

2   is not whether counsel's actions were reasonable.  The question is whether there is any

3   reasonable argument that counsel satisfied Strickland's deferential standard."  Id. (internal

4   quotation marks and citation omitted); see also Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)

5   ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the

6   writ simply because that court concludes in its independent judgment that the state-court decision

7   applied Strickland incorrectly.  Rather, it is the habeas applicant's burden to show that the state

8   court applied Strickland to the facts of his case in an objectively unreasonable manner.")

9   (citations omitted).

10                      i.  Failure to read Hobbs transcript

11          Petitioner first argues that his counsel was ineffective when he failed to read the transcript

12   of the Hobbs hearing prior to the suppression hearing.  Petitioner claims that the judge at the

13   Hobbs hearing "clearly found that there was no probable cause to issue the search warrant."

14   (Pet'r's Pet. at p. 3.)  First, Petitioner is mistaken that the judge who conducted the Hobbs

15   hearing "clearly found" that there was no probable cause to issue the search warrant.  Rather, the

16   judge at the Hobbs hearing was only determining whether there was a reasonable probability

17   whether or not the motion to quash the search warrant could be granted in the context of

18   determining whether to disclose the sealed search warrant affidavit.  (See Pet'r's Pet. Ex. F at p.

19   32 ("Counsel, first understand that I'm not finding whether or not a Motion to Quash should be

20   granted, I'm only finding whether there is a reasonable probability that one could be granted.").)

21   Second, Petitioner's assertions regarding whether or not his counsel's conduct fell below an

22   objective standard of reasonableness by failing to review the Hobbs hearing transcript are

23   conclusory.[3]  Conclusory allegations do not warrant granting federal habeas relief.  See James v.

24   _____

25          [3] Petitioner does make several specific ineffective assistance of counsel claims that are
     discussed infra.  However, merely stating that failing to read the transcript is objectively
26   unreasonable and caused Petitioner to suffer prejudice is conclusory.

1  Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a

2  statement of specific facts do not warrant habeas relief.").  Accordingly, this argument should be

3  denied.

4          ii.      Failure to object to same judge conducted suppression hearing that issued search

5                   warrant

6          Next, Petitioner argues that trial counsel was ineffective for failing to object to the same

7  trial judge conducting the suppression hearing that issued the search warrant.  However, under

8  California law, a motion to suppress evidence should first be heard by the judge who issued the

9  search warrant.  See Cal. Penal Code § 1538.5(b).  Petitioner comes forward with nothing

10 concerning the state judge's biasness aside from the fact that he issued the search warrant.  Thus,

11 had Petitioner's counsel objected to the same judge conducting the suppression hearing, it would

12 have been denied.  An attorney's failure to make a meritless objection does not constitute

13 ineffective assistance of counsel.  See Matylinsky v. Budge, 577 F.3d 1083, 1094 (9th Cir. 2009)

14 (concluding counsel's failure to object to testimony on hearsay grounds not ineffective where

15 objection would have bene properly overruled); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir.

16 1996) ("[T]he failure to take a futile action can never be deficient performance . . . .").

17 Accordingly, Petitioner is not entitled to federal habeas relief on this argument.

18          iii.     Failure to argue that the agents did not know where Cadotte went in the

19                   hotel, what Cadotte showed the informant and where Cadotte got the stuff
                     she showed the informant

20         Petitioner argues that counsel was ineffective because he did not argue that the agents did

21 not know where Cadotte went inside the Holiday Inn to get the drugs.  Furthermore, Petitioner

22 argues that counsel should have objected at the suppression hearing that there was nothing to

23 establish what Cadotte showed the informant nor where she got the stuff that Cadotte showed the

24 informant.  However, as noted by the Respondent, Petitioner's counsel did in fact argue that there

25 was nothing to show that Cadotte had ever actually been inside room 413 of the Holiday Inn.

26 (See Reporter's Tr. at p. 70 ("There is nothing, for example, to show that Ms. Cadotte had ever

been in the room . . .").  Additionally, Petitioner's counsel argued the following in his

supplemental brief before the suppression hearing was held:

> The police gave this informant money to buy drugs.  The informant
> goes on a car ride with someone purportedly to make the drug buy.
> Three hundred and ten dollars of the buy money disappear during
> the during the course of this car trip and, in the end, the informant
> is unable to produce any drugs for her police paymasters.

(Clerk's Tr. at p. 79.)  Accordingly, based on these arguments that Petitioner's counsel actually

made, Petitioner has failed to show that trial counsel's performance fell below an objective

standard of reasonableness.

> iv.    Failure to object that the informant could not hear the other side of the
>        phone call Cadotte had with "Buck"

In his next argument, Petitioner argues that counsel was ineffective for failing to object to

the fact that the informant could only hear one side of the conversation that Cadotte was having

with "Buck."  Contrary to Petitioner's argument, counsel did challenge the fact that the informant

could only hear one side of the conversation.  (See Clerk's Tr. at p. 79 ("There is no explanation

in the affidavit as to how Weilmunster could hear both sides of the conversation but the affidavit

clearly states her information in those terms.").  Accordingly, Petitioner failed to show that

counsel's performance fell below an objective standard of reasonableness because he did in fact

make this argument.

> v.    Failure to move to exclude the sealed portion of the search warrant
>       affidavit

Petitioner argues that counsel was ineffective for not moving to have the sealed portion of

the affidavit excluded from the determination of whether there was probable cause to obtain the

search warrant.  However, Petitioner's counsel did argue that the sealed portion of the affidavit

was not credible and therefore could not be the basis of probable cause to support the search

warrant.  (See Clerk's Tr. at p. 79 ("To call this credible information upon which to base

probable cause is to take a step toward the ridiculous.").)  Accordingly, Petitioner fails to show

1   that counsel's actions fell below an objective standard of reasonableness because he did make

2   this argument.

3                    vi.    Failure to argue that Osbourne was no longer in the subject hotel room
                            because he had been detained and questioned by officers and that
4                           Osbourne offered statements to the agents that were helpful to Petitioner

5          Petitioner also argues that counsel was ineffective regarding several of his arguments with

6   respect to Osbourne and relevant evidence from him.  Petitioner's trial counsel attached an

7   affidavit from Osbourne to his supplemental brief in which Osbourne stated the following:

8                    3.  On November 16, 2005 at approximately 9:00 a.m. I was in and
                     about the premises commonly known as the Holiday Inn Express
9                    Hotel, Corning, California.
                     4.  While at the Holiday Inn I was in possession of a metal safe
10                   which was my personal property.
                     5.  I had the metal safe while I was in the parking area of the hotel.
11                   6.  The metal safe was completely empty at all times that I was
                     present at the hotel.
12                   7.  After unsuccessfully attempting to place the safe in a bag, I left
                     the parking lot adjacent to the hotel and went inside to Room 413.
13                   8.  I was admitted to Room 413 and remained there for about one
                     hour.
14                   9.  While I was inside Room 413 there were only two other people
                     inside the room.  Susan Ray-Bailey and another female.
15                   10.  Buck Edward Boswell was not present while I was inside
                     Room 413.
16                   11.  I never entered or used the laundry facilities within the
                     Holiday Inn Hotel.
17                   12.  At approximately 3:30 p.m. on November 16, 2005 I was
                     detained by Corning Police Department Officer David Pryatel.
18                   13.  Officer Pryatel took me to the Corning Police Department.
                     14.  While at the Corning Police Department I was shown a video
19                   tape recording of myself in the parking area of the Holiday Inn
                     Hotel made by Agent Norwood.
20                   15.  I was shown a photograph of a James Palmer and asked by
                     Agent Norwood if Palmer was in Room 413 when I was there.
21                   16.  I told Agent Norwood that I only saw Susan Ray-Bailey and
                     another female in the room while I was there.
22                   17.  I was asked if there was a male in Room 413 with firearms.
                     18.  I told Agent Norwood that I had no knowledge of a male with
23                   firearms in Rome 413.

24   (Clerk's Tr. at p. 84-85.)  Petitioner's counsel presented the state court with Osbourne's affidavit

25   in an attempt to undercut the probable cause of the search warrant.  In fact, counsel made this

26   explicit argument in his supplemental brief.  (See Clerk's Tr. at p. 77.)  Accordingly, Petitioner

1    failed to show that his counsel's actions/inactions regarding using information from Osbourne

2    fell below an objective standard of reasonableness.   Petitioner's trial counsel used and relied on

3    Osbourne's affidavit attached to his supplemental brief in attempting to show that the search

4    warrant lacked probable cause.  Thus, Petitioner failed to show that counsel was ineffective.

5                    vii.    Failure to object to agent's assertion that Osbourne frequents places
                             associated with narcotics
6

7           Petitioner next asserts that counsel was ineffective for failing to object to the narcotic

8    agent's assertion in the search warrant affidavit that Osbourne is known to frequent places

9    associated with narcotics.  In support of this argument, Petitioner asserts that the agent testified at

10   trial that neither he nor any other officer that he knows had ever arrested Osbourne for drugs.

11   (See Pet'r's Pet. at p. 15.)  At trial, the agent testified that he could not recall whether he had any

12   recollection of whether Osbourne had been arrested for narcotics.  (See Reporter's Tr. at p. 160.)

13   However, the point that the officer could not recall whether Osbourne had been arrested does not

14   establish that the agent's statement in the search warrant affidavit that Osbourne frequented

15   places with narcotics was false.  Rather, it only indicates that Osbourne may have never been

16   arrested for drugs based on what the officer could recall, not that he never frequented places that

17   were known to have narcotics.  Thus, Petitioner fails to show that he is entitled to federal habeas

18   relief on this ineffective assistance of counsel argument as he fails to show to a reasonable

19   probability that the outcome of the proceeding would have been different had the objection been

20   made.

21                    viii.  Failure to view videotape of Osbourne in the parking lot

22          Next, Petitioner argues that counsel was ineffective for not viewing the videotape of

23   Osbourne in the parking lot.  Petitioner argues that this would have shed light on whether

24   Osbourne ever emptied anything out of the safe as the agents claim, or whether Osbourne's

25   statements in his affidavit that he was trying to simply put the safe in a duffel bag was truthful.

26   Petitioner fails to show what in fact this videotape showed or how, to a reasonable probability it

                                                    18

would have changed the outcome of the suppression hearing.  As indicated by the judge at the suppression hearing, a totality of circumstances led to the finding of probable cause to support the search warrant.  Viewing Osbourne's actions in the parking lot was but one small piece of a much larger puzzle which gave rise to the finding of probable cause.  Petitioner's allegation that his counsel was ineffective for failing to view the videotape does not merit federal habeas relief as it fails to show to a reasonable probability that the outcome of the proceeding would have been different.

ix.  Failure to investigate the number of visitors into Room 413

Petitioner asserts the following in his petition:

> The statement of probable cause states that the agents received information that the guests in Room 413 were receiving numerous guests and phone calls in excess of the normal business traveler and this was also another fact that was used by the judge at the suppression hearing to uphold the search warrant.  Yet had counsel investigated that, he would have learned that it was false.  In the six hours the agents had the room under surveillance no one guest arrived and the motel manager testified at trial that there was no unusual amount of phone calls to the room and all counsel had to do was interview the manager and he would have learned that again the agents misstated even more facts to obtain the search warrant and the motel manager also testified at trial that there was only a little bit more traffic than the normal business traveler.

(Pet'r's Pet. at p. 20-21.)  Petitioner fails to show that he is entitled to federal habeas relief on this argument.  The hotel manager testified at trial that the amount of foot traffic going in and out of Room 413 was more than the norm in that Room 413 had about fifteen visitors.  (See Reporter's Tr. at p. 139.)  Therefore, Petitioner failed to show that this statement about the unusual number of visitors was false.  Petitioner failed to satisfy the requisite Strickland prejudice standard.

x.    Failure to bring to the court's attention that requesting linens and asking to not be disturbed at a hotel are not unusual requests

Petitioner next argues that:

> The next fact listed by the Judge at the hearing is the fact that Mrs.

19

> Bailey went to the front desk to pay for another night and request clean sheets but asked not to be disturbed by maid service and that Judge stated that that was an unusual request and counsel was ineffective for not investigating that fact and bringing it to the court's attention that it is not an unusual request as the Court stated, but is so common that all hotel rooms come with a "Do Not Disturb" sign that the occupants of the room can hang on the door so they will not be disturbed by maid service.

(Pet'r's Pet. at p. 26-27.) Presumably, Petitioner's argument appears to be that had his counsel made the argument listed above at the suppression hearing, the search warrant would have been invalidated for lack of probable cause and the evidence seized during the searched would be suppressed. Assuming *arguendo* that Petitioner's counsel should have made this argument, Petitioner failed to show that he was prejudiced. As previously indicated, the suppression hearing judge examined many factors in their totality in determining that there was probable cause for the search warrant. (See Reporter's Tr. at p. 67-69.) In light of the other evidence cited by the suppression hearing judge, Petitioner failed to show to a reasonable probability that his motion to quash the search warrant would have been granted had Petitioner's counsel made this argument at the suppression hearing.

              xi.    Failure to raise the issue to the court regarding the purported marijuana stems found in the hotel laundry room

Petitioner's next ineffective assistance of counsel claim arising from the suppression hearing is as follows:

> The next fact listed by that Judge at that hearing that is false is the allegation about Mr. Osbourne being in the laundry room and approximately forty five minutes later some one said they smelled marijuana and the judge at the hearing states some stems and seeds where [sic] found where he had been in the laundry room and counsel was ineffective for not objecting and raising the issue in the court that Osbourne swears under oath that he was never in the laundry room and doesn't even know where it is and it is unknown what was found in the laundry room because hotel staff threw it away. Furthermore counsel was ineffective for not raising the issue in the court that that fact is irrelevant as it boils down to some unknown person told some unknown staff at the hotel that some unknown substance smelled in the laundry room.

1   (Pet'r's Pet. at p. 27-28.)  However, Petitioner's counsel did attach Osbourne's affidavit in

2   making his motion to quash the search warrant and suppress evidence.  Additionally, Petitioner's

3   counsel highlighted the fact that Osbourne stated in his affidavit that he had not been in the

4   laundry room in his supplemental brief.  (See Clerk's Tr. at p. 76 ("Mr. Osbourne also told the

5   officers that he had not been in the laundry area of the hotel which directly contradicts statements

6   in the affidavit that hotel personnel had seen him there.").  Thus, Petitioner's counsel was not

7   ineffective because he did in fact did argue that Osbourne was not in and around the laundry area

8   of the Holiday Inn.  Accordingly, Petitioner is not entitled to habeas relief on this argument.

9       B.  Claim II

10      In Claim II, Petitioner argues that his conviction was based on evidence known to be false

11  by the prosecutor.  In support of his argument, Petitioner asserts that the prosecutor presented

12  false testimony when "both Agent Beeman and the Prosecutor told the jury that only men's wear

13  was found in the room."  (Pet'r's Pet. at p. 36.)

14      The last reasoned decision on this Claim was from the Superior Court which stated as

15  follows:

> Generally speaking, whether evidence is true or false is for
> determination of the trier of fact in the trial court.  Unless there is a
> demonstration in a petition for writ of habeas corpus that any false
> evidence is such that it unerringly points to a petitioner's innocence
> and undermines the entire case of the prosecution, it is insufficient
> to warrant writ relief.  [In re Weber (1974) 11 Cal.3d 703,
> 724.]  The allegations of this petition do not meet that criteria.

20  (Resp't's Lodged Doc. 5 at p. 4.)

21      At the outset, to the extent that the Petitioner bases this Claim on California law, it does

22  not merit federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (stating that

23  "it is not the province of a federal habeas court to reexamine state-court determinations of state-

24  law questions").  However, the prosecutor's knowing use of false or perjured testimony violates a

25  criminal defendant's due process rights.  See Napue v. Illinois, 360 U.S. 264, 269 (1959);

26  see also United States v. Bagley, 473 U.S. 667, 680 n. 9 (1985) ("a conviction obtained by the

1  knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the

2  false testimony could have affected the jury's verdict"); Morales v. Woodford, 388 F.3d 1159,

3  1179 (9th Cir. 2004) ("The due process requirement voids a conviction where the false evidence

4  is known to be such by representatives of the State.") (internal quotation marks and citation

5  omitted). "The same result obtains when the State, although not soliciting the false evidence,

6  allows it to go uncorrected when it appears." See Napue, 360 U.S. at 269. However, mere

7  inconsistencies in the evidence do not constitute the knowing use of perjured testimony by the

8  prosecutor. See United States v. Geston, 299 F.3d 1130, 1135 (9th Cir. 2002). Rather, it is

9  within the province of the jury to resolve the disputed testimony. See id. A factual basis for

10  attributing knowledge to the government that the testimony was perjured must be established.

11  See Morales, 388 F.3d at 1179 (rejecting a due process violation claim where petitioner "sets out

12  no factual basis for attributing any misconduct, any knowing presentation of perjury, by the

13  government"). Thus, to prevail on a false evidence claim, "the petitioner must show that (1) the

14  testimony (or evidence) was actually false, (2) the prosecution knew or should have known

15  the testimony [or evidence] was actually false, and (3) that the false testimony [or evidence] was

16  material." See Hein v. Sullivan, 601 F.3d 897, 908 (9th Cir. 2010), cert. denied, 131 S.Ct. 2093

17  (2011).

18       Petitioner has failed to show that the evidence was actually false. During the course of

19  the trial, the following colloquy took place between Agent Beeman and the prosecutor:

20       Q:  During the course of your search of the room, did you locate
            anything that indicated a female was staying there on a regular
21          basis?
            A:  Not to my recollection.
22          Q:  Any makeup?
            A:  No sir.
23          Q:  Any female clothing?
            A:  No.
24          Q:  Tampons?
            A:  No.
25          Q:  Feminine perfume?
            A:  No sir.
26          Q:  The clothing that you did locate, what gender did it belong to?

1          A:  It appeared to be all male's clothing.
           Q:  And the tennis shoes?
2          A:  They appeared to be men's tennis shoes.

3   (Reporter's Tr. at p. 312-13.)  Subsequently, on the re-cross of Beeman, the following colloquy

4   took place:

5          Q:  And you were asked about male or female clothing.  You had a
               picture there that indicated the closet area of the room?
6          A:  Yes, sir.
           Q:  Did you take any of that clothing when you collected evidence?
7          A:  No.
           Q:  You left it all behind?
8          A:  Yes.
           Q:  Did you take those bags and open them all up and go through
9          and identify what is in each bag?
           A:  We searched each bag, yes.
10         Q:  What did the search consist of?
           A:  Various men's clothing.
11         Q:  Did you just open the zipper, kind of rifle through it and call it
               good?
12         A:  I don't recall.  I – I recall searching one of the bags personally.
               The other bags, I don't know. I know mine, I pulled each item out
13         and searched through each item of clothing.  I find nothing, I place
               everything back in the bag.
14         Q:  So you don't know what happened with the other bag?
           A:  No, sir.
15         Q:  And you didn't take any of that clothing with you?
           A:  No sir.

16

17  (Id. at p. 315-16.)  Petitioner has not shown that the testimony that only men's wear was found in

18  Room 413 was false.  Therefore, he is not entitled to federal habeas relief on Claim II.

19          C.  Claim III

20          In Claim III, Petitioner argues that:

21          The State failed to disclose evidence favorable to the accused.
            This violated Petitioner's right to due process of law as guaranteed
22          by Amendments 5 and 14 to the U.S. Constitution.  Specifically,
            the prosecutor office and the case agent in this case, Agent
23          Beeman, withheld the exculpatory statements of Ms. Moon to them
            at Petitioner's hearing on the illegal search and seizure.

24

25  (Pet'r's Pet. at p. 42.)  Petitioner asserts that Ms. Moon told the prosecutor that she never

26  obtained the drugs found in her possession from Petitioner and that the prosecutor failed to turn

23

over this evidence to Petitioner.  (See id. at p. 42-43.)  The last reasoned decision on this Claim was from the Superior Court which decided Petitioner's state habeas petition.  That court analyzed this Claim as follows:

> The declaration of Defendant/Petitioner is not sufficient to establish the facts alleged.  Defendant/Petitioner has no personal knowledge regarding the allegations.  Simply including it in a petition is not sufficient.  Furthermore, even if the Court assumes that the allegations are true, the fact that the prosecution may have failed to disclose exculpatory evidence is not, in and of itself, sufficient to warrant relief.  For example, in this case, it is not at all clear from the petition that Defendant/Petitioner did not already know the information that Defendant/Petitioner alleges the prosecution failed to disclose at or before the time of trial.  If Defendant/Petitioner already knew the information, failure to disclose had no bearing on Defendant/Petitioner's right to a fair trial.  Finally, again assuming that the allegations are true, the allegations of the petition are insufficient for the Court to even conclude that the non-disclosed information was exculpatory.

(Resp't's Lodged Doc. 5 at p. 2.)

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Impeachment evidence, as well as exculpatory evidence, falls within the Brady rule, and the prosecutor is obliged to disclose both, even in the absence of a specific discovery request.  See Bagley, 473 U.S. at 676-77.  "There are three components to a true Brady violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that the evidence must have been suppressed by the State, either willfully or inadvertently, and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

The prejudice element of a Brady inquiry is also described as "materiality," i.e., that "the suppressed evidence must be material to the guilt or innocence of the defendant."  United States v. Jernigan, 492 F.3d 1050, 1053 (9th Cir. 2007) (en banc).  Evidence is considered material under Brady only if there is "a reasonable probability that, had the evidence been disclosed to the

defense, the result of the proceeding would have been different." <u>Kyles v. Whitley</u>, 514 U.S. 419, 433-34 (1995) (internal quotation marks and citation omitted).  A "reasonable probability" means a probability "sufficient to undermine confidence in the outcome" of the trial.  <u>Bagley</u>, 473 U.S. at 682.  Furthermore, materiality under <u>Brady</u> requires that the undisclosed information or evidence be admissible or lead to admissible evidence.  See <u>Wood v. Bartholomew</u>, 516 U.S. 1, 5-7 (1995) (per curiam) (holding that polygraph test rests were not material under <u>Brady</u> because the results were inadmissible under state law and therefore were not "evidence," and because the polygraph results would not have led to any additional admissible evidence).

Petitioner is not entitled to federal habeas relief on this Claim.  At trial, the following colloquy took place between Moon and Petitioner's trial counsel on cross-examination:

> Q:  Now, prior to coming here and testifying were you contacted by any members of law enforcement or the district attorney's office regarding your potential testimony?
> A:  I was subpoenaed last month and I came here and it was a different D.A. and I am not sure of his name that I spoke with the officer that is sitting there, and I advised that D.A., and I think it was his name Colby or something, I don't know, but I told him the exact conversation I had with the officer and I told him that what was in the police report was not what, that was not the conversation that took place and –
> Q:  So, ma'am, what did you tell this other district attorney when you this had [sic] conversation?
> A:  I told him that the officer asked me if I bought methamphetamine from Mr. Boswell and I said no, and he asked me if he gave it to me and I said no, and he goes, "Well, then, you must have been over here giving him sexual favors for it," and I said, "Fuck you," to be honest with you, and that was the extent of the conversation.

(Reporter's Tr. at p. 177.)  As the above colloquy indicates, the jury heard testimony from Moon that she told the prosecutor that she had not received the drugs from Petitioner.  Petitioner has failed to show that a <u>Brady</u> violation occurred because the evidence was elicited at trial by Petitioner's counsel after Moon was questioned by Petitioner's counsel.  Thus, the evidence of her conversation with the prosecutor was in fact presented to the jury at trial.  Accordingly, Claim III should be denied.

1          D.  Claim IV

2          In Claim IV, Petitioner asserts that:

3               The state denied the defense the right to reciprocal discovery rights
                against the state.  In violation of Petitioner's rights under the 5th
4               and 14th Amendments to the U.S. Constitution.  Specifically, at
                trial the prosecutor for the first time introduced statements that Ms.
5               Moon had allegedly made to her probation officer to discredit her
                testimony at trial as she was testifying but never informed the
6               defense that Ms. Moon had ever made any statements regarding
                this case to a probation officer, nor was Petitioner's counsel ever
7               given a copy of Ms. Moon's alleged statement to a probation
                officer that prosecution was in possession of.

8

9    (Pet'r's Pet. at p. 46.)  The last reasoned decision on this Claim was from the Superior Court on

10   Petitioner's state habeas petition.  The Superior Court stated as follows with respect to this

11   Claim:

12               Ground eleven is an allegation that reciprocal discovery was
                denied.  Assuming the allegation is true, failure of the prosecution
13               to provide discovery, in and of itself, does not warrant issuance of
                either a writ, or an order to show cause.  The facts alleged in the
14               petition are simply insufficient for the Court to determine what, if
                any, bearing this may have had on the ability of the
15               Defendant/Petitioner to present a defense at trial.

16   (Resp't's Lodged Doc. 5 at p. 2-3.)

17          During redirect, the following colloquy took place between the prosecutor and Ms. Moon:

18               Q:  You told your probation officer you didn't want to testify
                today; is that correct?
19               A:  I don't believe I should be testifying at all and I – yeah, I don't
                quite understand why I am, you know, why I was subpoenaed –
20               Q:  Ma'am, I just want you to answer the question.
                A:  Okay.
21               Q:  Did you tell your probation officer you don't want to testify?
                A:  I told the probation officer – yeah, I did.
22               Q:  Did you tell your probation officer you had been threatened?
                A:  No.  I said that if I was going to be in a situation where I was
23               going to be testifying against, you know, not particularly the
                defendant, but anybody, then, you know, you would think that like
24               the D.A. or whoever it is that is wanting you to do that would, you
                know, try to talk to you before the matter or before the trial or
25               whatnot, and when you're a witness, you know, you ought to take
                certain precautions, I guess, you know.

26

1  (Reporter's Tr. at p. 180-81.)

2        The Supreme Court has stated that "'[t]here is no general constitutional right to discovery

3  in a criminal case, and Brady,' which addressed only exculpatory evidence, 'did not create one.'"

4  Gray v. Netherland, 518 U.S. 152, 168 (1996) (quoting Weatherford v. Bursey, 429 U.S. 545,

5  560 (1977)).  The evidence of what Moon told her probation officer was not exculpatory, rather it

6  was used to impeach Moon.  Furthermore, even if Brady did apply to this Claim, Petitioner has

7  failed to show that had the evidence been disclosed to the defense, it would have, to a reasonable

8  probability affected the outcome of the proceeding.  See Bagley, 473 U.S. at 682 (explaining the

9  relevant standard for materiality under Brady).  It did not relate to Petitioner's guilt or innocence,

10 but instead related to the side issue of whether Petitioner had previously told her probation

11 officer that she was scared of the Petitioner.  Accordingly, Petitioner has failed to show that the

12 state court's denial of this Claim was an unreasonable application of clearly established federal

13 law.  Therefore, Claim IV should be denied.

14        E.  Claim V

15        In Claim V, Petitioner argues that:

16              The state destroyed material evidence that possessed an
                exculpatory value that was apparent before the evidence was
17              destroyed, and which could not be duplicated by any other means,
                and then used references to that evidence to obtain a conviction.
18              This violated Petitioner's right to due process of law and
                Petitioner's right to a fair trial guaranteed by Amendments 5 and
19              14 to the U.S. Constitution.  Specifically, the alleged "men's wear"
                that the prosecutor and Agent Beeman repeatedly referred to during
20              the trial as proof that Petitioner was the occupant of the room that
                had illegal items in it that Petitioner was convicted of possessing,
21              was all left behind and destroyed so no examination of the alleged
                "men's wear" could be made by Petitioner.
22

23 (Pet'r's Pet. at p. 49.)

24        The Superior Court provided the last reasoned decision on this Claim in deciding

25 Petitioner's state habeas petition and stated the following:

26              Ground twelve is an allegation that the prosecution destroyed

27

1
2
3
4
5
6
7

> exculpatory evidence, specifically what could have been women's
> clothing.  As Defendant/Petitioner points out, the exculpatory
> nature had to be evident at the time of its destruction.  Actually,
> this is not a case of destroying exculpatory evidence, it is a case
> more appropriately alleged as a failure to maintain exculpatory
> evidence.  The problem with the allegation is that whether, in fact,
> there was women's clothing that was observed by the officers.  The
> only evidence is that there was not.  The allegations of the petition
> merely allege that there could have been.  Such an allegation
> without any indication that, in fact, there was women's clothing
> that was not maintained as evidence is mere speculation and is
> insufficient to warrant relief.

8   (Resp't's Lodged Doc. 5 at p. 3.)

9        The duty to preserve evidence relates to material evidence and to evidence whose

10  exculpatory value was apparent before its destruction and that is of such nature that the petitioner

11  cannot obtain comparable evidence from other sources.  See California v. Trombetta, 467 U.S.

12  479, 489 (1984).  Unless a petitioner "can show bad faith on the part of the police, failure to

13  preserve potentially useful evidence does not constitute a denial of due process of law."  Arizona

14  v. Youngblood, 488 U.S. 51, 57-58 (1988).  Bad faith depends on the police officer's knowledge

15  of the exculpatory value of the evidence at the time of its destruction.  See Youngblood, 488 U.S.

16  at 56.  Mere negligence does not constitute bad faith.  See id. at 58.

17       Petitioner's argument is based upon his unsupported allegation that some of the clothing

18  found in the hotel room was women's clothing.  Petitioner makes no colorable showing that the

19  police did not preserve the clothes evidence to prevent disclosure of evidence favorable to the

20  defense, nor is there any reason to believe that the exculpatory value of the clothes evidence of

21  the clothes was apparent prior to failing to preserve it for trial.  See e.g., Phillips v. Woodford,

22  267 F.3d 966, 986-87 (9th Cir. 2001); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000)

23  (state court's rejection of prosecutorial misconduct claim was not clearly erroneous where habeas

24  petitioner failed to show that deputy's destruction of his handwritten notes was in "bad faith" or

25  that such notes had "potential exculpatory value").  Accordingly, Petitioner is not entitled to

26  federal habeas relief on Claim V as he failed to show that the state court unreasonably applied

clearly established federal law.

F.  Claim VI

Petitioner argues as follows in Claim VI:

> Outside influences upon a jury raise a presumption of prejudice
> that imposes a heavy burden on the state to overcome by showing
> that those influences were harmless to the Petitioner, violating
> Petitioner's right to a jury trial, a fair trial and due process of law
> guaranteed by Amendments 5, 6 and 14 to the U.S. Constitution.
> Specifically, Petitioner was escorted through the members of the
> jury by armed officers twice a day while Petitioner's co-defendant
> who was out on bail sat outside the courtroom with the jurors
> waiting to come into the courtroom after Petitioner was escorted
> through the jurors and into the courtroom, making it obvious that
> Petitioner was in custody.

(Pet'r's Pet. at p. 56-57.)

The Superior Court rejected this Claim in denying Petitioner's state habeas petition by

stating that, "[a]ssuming the truth of the allegations, it is mere speculation what, if any, impact

this may have had on members of the jury and, therefore, the allegations are insufficient to

warrant relief."  (Resp't's Lodged Doc. 5 at p. 3.)

"Central to a defendant's Fourteenth Amendment right to a fair trial is the principle that

one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of

the evidence introduced at trial, and not on the grounds of official suspicion, indictment,

continued custody, or other circumstances not adduced as proof at trial."  Holbrook v. Flynn, 475

U.S. 560, 567 (1986).  Some practices, like forcing a defendant to wear prison clothing or

shackles are at odds with this principle.  See Estelle v. Willaims, 425 U.S. 501, 503-04 (1976).

Nevertheless, this right is not absolute and sometimes restrictive measures or noticeable security

is needed.  See Holbrook, 475 U.S. at 567-68.

Petitioner does not argue that he was in restraints when he was led into the courtroom by

the guards.  Instead, he argues that the fact that was lead into the courtroom by guards in the

presence of the jury violated his due process right to a fair trial.  The Ninth Circuit has explained

that brief or inadvertent glimpses of a defendant in physical restraints outside of a courtroom

does not warrant federal habeas relief unless the petitioner makes an affirmative showing of prejudice.  See Williams v. Woodford, 384 F.3d 567, 593 (9th Cir. 2004) (citing Ghent [v. Woodford], 279 F.3d [1121], 1133 [(9th Cir. 20020)] (the jurors' occasional, brief glimpses of the defendant in handcuffs and other restraints in the hallway at the entrance to the courtroom was not prejudicial); United States v. Olano, 62 F.3d 1180, 1190 (9th Cir. 1995) ("a jury's brief or inadvertent glimpse of a defendant in physical restraints is not inherently or presumptively prejudicial to to a defendant") (other citations omitted)).

Petitioner's argument is even one step removed from these cases however as he does not assert that he was in any type of restraint when he was lead into the courtroom by law enforcement.  In his traverse, Petitioner cites to Remmer v. United States, 347 U.S. 227 (1954), Holbrook v. Flynn, 475 U.S. 560 (1986) and King v. Rowland, 977 F.2d 1354 (9th Cir. 1992) in asserting that he had a constitutional right not to be lead into the courtroom by armed guards. For the following reasons, these cases are unavailing.

In Remmer, the Supreme Court explained that:

> After the jury had returned its verdict, the petitioner learned for the first time that during the trial a person unnamed had communicated with a certain juror, who afterwards became the jury foreman and, and remarked to him that he could profit by bringing in a verdict favorable to the petitioner.

347 U.S. at 228.  The Court explained that "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial." Id. at 229.  Contrary to Remmer, there is no indication in Petitioner's case that there was any private communication, contact or tampering with the jury who decided Petitioner's case.  Thus, Remmer is distinguishable.

In Holbrook, the Supreme Court addressed the question of "whether a criminal defendant was denied his constitutional right to a fair trial when, at his trial with five codefendants, the customary courtroom security force was supplemented by four uniformed troopers sitting in the

30

first row of the spectator's section." 475 U.S. at 562.  The Court held that it could not find an

unacceptable risk of prejudice in that case.  See id. at 571.  It continued by explaining that,

"[u]nlike a policy requiring detained defendants to wear prison garb, the deployment of troopers

was intimately related to the State's legitimate interest in maintaining custody during the

proceedings."  Id. at 572.

Recently, the Ninth Circuit analyzed Holbrook in Hayes v. Ayers, 632 F.3d 500 (9th Cir.

2011).  At issue in Hayes was whether security screening of everyone who entered the courtroom,

including prospective jurors denied a petitioner due process and a right to a fair trial.  See id. at

521.  The Ninth Circuit then explained that:

> Holbrook v. Flynn, 475 U.S. 560 (1986), which the California
> Supreme Court expressly considered in affirming Hayes's
> conviction, establishes whether courtroom security measures
> violate a defendant's right to a fair trial.  We must first "look at the
> scene presented to jurors and determine whether what they saw
> was so inherently prejudicial as to pose an unacceptable threat to
> defendant's right to a fair trial."  Holbrook, 475 U.S. at 572.  In
> assessing inherent prejudice, the question is "whether an
> unacceptable risk is presented of impermissible factors coming into
> play" in the jury's evaluation of the defendant.  Id. at 570.  If
> security measures are not found to be inherently prejudicial, a court
> then considers whether the measures actually prejudiced members
> of the jury.  Id. at 572.  "[I]f the challenged practice is not found
> inherently prejudicial and if the defendant fails to show actual
> prejudice, the inquiry is over."  Id. . . . .
>
> In Holbrook, the Court concluded that the presence of uniformed
> security officers sitting behind the defendants at trial was not
> inherently prejudicial.  The court distinguished cases where
> defendants were shackled or required to appear in prison garb
> before the jury:
>
>> The chief feature that distinguishes the use of
>> identifiable security officers from courtroom
>> practices we might find inherently prejudicial is the
>> wider range of inferences that a juror might
>> reasonably draw from the officers' presence.  While
>> shackling and prison clothes are unmistakable
>> indications of the need to separate a defendant from
>> the community at large, the presence of guards at a
>> defendant's trial need not be interpreted as a sign
>> that he is particularly dangerous or culpable.  Jurors
>> may just as easily believe the officers are there to

31

1
2
3
4
5
6

> guard against disruptions emanating from outside
> the courtroom or to ensure that tense courtroom
> exchanges do not erupt violence.  Indeed, it is
> inherently possible that the jurors will not infer
> anything at all from the presence of the guards . . . .
> Our society has become inured to the presence of
> armed guards in most public places; they are
> doubtless taken for granted so long as their numbers
> or weaponry do not suggest particular official
> concern or alarm.  475 U.S. at 569.

7   Hayes, 632 F.3d at 521-22.  Ultimately, in Hayes, the Ninth Circuit determined that the

8   placement of deputies inside and outside the courtroom was not inherently prejudicial and the

9   petitioner failed to show that he was actually prejudiced by the security measures.  See id. at 522.

10         Similar to Holbrook and Hayes, Petitioner is not entitled to federal habeas relief on this

11  Claim.  First, as previously explained, Petitioner does not assert that he was shackled or in prison

12  garb when he was seen by the jury.  Additionally, the presence of guards need not be interpreted

13  as a sign that Petitioner was inherently dangerous or culpable.  The jurors may have just as easily

14  believed the guards were there to protect Petitioner from any disruptions as he was lead into the

15  courtroom.  See Holbrook, 475 U.S. at 569.  Furthermore, Petitioner failed to show that any of

16  the jurors were actually influenced by Petitioner being lead into the courtroom by guards.  See

17  Hayes, 632 F.3d at 522.  Accordingly, Petitioner fails to show that his due process and fair trial

18  rights were violated based on the Supreme Court's holding in Holbrook.

19         Finally, Petitioner's citation to King v. Rowland, 977 F.2d 1354 (9th Cir. 1992) is also

20  unavailing.  In King, the Ninth Circuit determined that the use of three deputy sheriffs to guard

21  King was not improper.  Specifically, relying on Holbrook, the Ninth Circuit explained that

22  "[t]he inherent risk of prejudice is not as great from the use of armed security personnel as it is

23  from shackling, because there is a 'wider range of inferences that a juror might reasonably draw

24  from the officers' presence.'"  Id. at 1358 (quoting Holbrook, 475 U.S. at 569.)  Accordingly, the

25  Ninth Circuit determined that the petitioner was not entitled to federal habeas relief.  See id.

26  Similarly, the use of armed guards to escort Petitioner into the courtroom was not inherently

prejudicial.  Petitioner fails to show that <u>King</u> entitles him to federal habeas relief as well.

Accordingly, for the reasons discussed above, Petitioner is not entitled to federal habeas relief on this Claim.

G.  Claim VII

In Claim VII, Petitioner asserts that his Constitutional rights were violated when he was convicted based on the uncorroborated accomplice testimony of Moon.  The last reasoned decision on this Claim was from the California Court of Appeal on direct appeal which stated the following:

> Defendant argues that the judgment must be reversed because he was convicted on the basis of uncorroborated, recanted accomplice statements.  The argument fails.
>
> "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (§ 1111.)  The jury was instructed on the need for corroboration.  [FN 7]
>
>> [FN 7]  The jury was instructed:  "If you decide that a declarant was an accomplice, then you may not convict Defendant Boswell based on their statements alone.  You may use the statements or testimony of an accomplice to convict the defendant only if:  One, the accomplice's statement or testimony is supported by other evidence that you believe; and, two, the supporting evidence tends to connect the defendant to the commission of the crimes."
>
> Defendant's position is flawed because he assumes Moon was an accomplice, and he therefore disregards her statement to the police that she got her drugs from defendant.  However, we have explained Moon was no an accomplice.  Therefore, her statement incriminating defendant need not be corroborated, and her statement, if believed by the jury, provided corroboration for Ray-Bailey's statements incriminating defendant (in the event the jury found Ray-Bailey was an accomplice).
>
> We recognize the trial court gave the jury the option of finding Moon was an accomplice.  Nevertheless, we see nothing in the closing arguments urging the jury to do so.

33

1          We conclude defendant fails to show grounds for reversal based on
     uncorroborated accomplice statements.
2

3    (Slip Op. at p. 16-17.)

4          Petitioner's complaint with the testimony produced at trial is that Moon told agents upon

5    her arrest that she obtained the methamphetamine found within her possession from Petitioner.

6    (See Reporter's Tr. at p. 233.)  Petitioner asserts that Moon was an accomplice and that this

7    testimony lacked the requisite corroboration.  Petitioner is not entitled to federal habeas relief on

8    this Claim for the following reasons.

9          Under California law, a "conviction cannot be had upon the testimony of an accomplice

10   unless it be corroborated by such other evidence as shall tend to connect the defendant with the

11   commission of the offense."  Cal. Penal Code § 1111.  "An accomplice is . . . one who is liable to

12   prosecution for the identical offense charged against the defendant on trial in the cause in which

13   the testimony of the accomplice is given."  Id.; People v. Verlinde, 100 Cal. App. 4th 1146, 1158,

14   123 Cal. Rptr. 2d 322 (2002).

15         Penal Code section 1111 "is a state law requirement that a conviction be based on more

16   than uncorroborated accomplice testimony . . . . As a state statutory rule, and to the extent that

17   the uncorroborated testimony is not 'incredible or insubstantial on its face,' the rule is not

18   required by the Constitution or federal law."  Laboa v. Calderon, 224 F.3d 972, 979 (9th Cir.

19   2000) (citation omitted).  Thus, to the extent that Petitioner is claiming that the trial court

20   misapplied Penal Code section 1111, this claim is not cognizable on federal habeas review.  Id.;

21   see also Cummings v. Sirmons, 506 F.3d 1211, 1237 (10th Cir. 2007) (no constitutional

22   requirement that the testimony of an accomplice-witness be corroborated); Harrington v. Nix,

23   983 F.2d 872, 874 (8th Cir. 1993) ("[S]tate laws requiring corroboration do not implicate

24   constitutional concerns that can be addressed on habeas review.  There is also no constitutional

25   requirement that accomplice testimony be corroborated." (citations omitted)).

26         Nevertheless, "[a] State violates a criminal defendant's due process right to fundamental

34

1   fairness if it arbitrarily deprives the defendant of a state law entitlement." Laboa, 224 F.3d at 979

2   (citing Hicks v. Oklahoma, 447 U.S. 343, 346 (1980)); Estelle v. McGuire, 502 U.S. 62, 72-73

3   (1991).  In Laboa, the Ninth Circuit assumed that a violation of Penal Code section 1111

4   amounted to the arbitrary deprivation of a state law entitlement in violation of Hicks v.

5   Oklahoma, but ultimately concluded the accomplice's testimony was sufficiently corroborated.

6   Laboa, 224 F.3d at 979.  Since Laboa, courts within the Ninth Circuit have treated section 1111

7   as a state law entitlement creating a liberty interest.  See, e.g., Chagolla v. Gonzalez, Civ. No. 08-

8   914, 2011 WL 1344565, at *10 (C.D. Cal Feb. 16, 2011), report and recommendation adopted

9   by, 2011 WL 1344271 (C.D. Cal. Apr. 8, 2011); Jenkins v. Hedgpeth, Civ. No. 08-6152, 2010

10  WL 4449058, at *6 (C.D. Cal. Sept. 10, 2010), report and recommendation adopted by, 2010 WL

11  4393266 (C.D. Cal. Oct. 29, 2010);; Tran v. Horel, Civ. No. 06-4508, 2008 WL 4414296,  at *10

12  (N.D. Cal. Sept. 25, 2008), aff'd by, No. 09-15183, 446 Fed. Appx. 859 (9th Cir. Aug. 9, 2011),

13  petition for cert. filed, (U.S. Jan. 13, 2012) (No. 11-8356).

14      Assuming arguendo that section 1111 does create a liberty interest protected by the

15  Constitution, Petitioner still is not entitled to federal habeas relief.  At the outset, as described

16  infra Part V.H, whether Moon was in fact an accomplice was a factual issue that was left up to

17  the jury to decide.  Therefore, and perhaps most importantly, Section 1111 would not apply

18  where Moon is not an accomplice.  The jury was instructed that it could not convict Petitioner

19  solely on the basis of uncorroborated testimony of an accomplice.  At trial, Moon's statement to

20  the police upon their search of the hotel room was simply that she bought drugs from Boswell

21  which would not necessarily have made her an accomplice.  See People v. Mimms, 110 Cal.

22  App. 2d 310, 314, 242 P.2d 331 (1952) ("So far as the charge of sale of narcotics is concerned,

23  the purchaser is not an accomplice of the seller").

24      Second, even assuming arguendo that Moon was an accomplice, there was sufficient

25  corroboration.  The evidence in this case was not limited to Moon's testimony.  "The

26  corroborative evidence required by section 1111 need not corroborate every fact to which the

accomplice testified or establish the corpus delicti, but is sufficient if it tends to connect the

defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the

truth." Laboa, 224 F.3d at 979 (internal quotation marks and citation omitted); People v. Fauber,

2 Cal. 4th 792, 834, 9 Cal. Rptr. 2d 24, 831 P.2d 249 (1992).  "Corroborating evidence may be

slight, may be entirely circumstantial, and need not be sufficient to establish every element of the

charged offense."  People v. Williams, 49 Cal. 4th 405, 456, 111 Cal. Rptr. 3d 589, 233 P.3d

1000 (2010) (internal quotation marks and citation omitted).  By way of example only, testimony

included the comings and goings of numerous visitors into the hotel room along with the

occupants of the room declining maid service which may have indicated that there was illegal

activity occurring.   The police then obtained a search warrant after receiving information from

an informant and set up surveillance of the Holiday Inn.  After viewing Osbourne who was

known to frequent places that had narcotics, agents eventually searched the room and found

significant quantities of drugs and firearms where Petitioner was located.  Additionally,

Petitioner was the only man found in the room, yet only men's clothing was found in the hotel

room.  As stated above, corroboration need only be slight.  In light of the above, there was at

least "slight" corroboration even if Moon and Ray-Bailey were accomplices (something that was

left as a factual issue at trial).  Accordingly, Petitioner is not entitled to federal habeas relief for

the reasons stated above.

H.  Claim VIII

In Claim VIII, Petitioner argues that the trial court erred in failing to instruct the jury *sua*

*sponte* that Ray-Bailey and Moon were accomplices as a matter of law.  The last reasoned

decision on this issue was from the California Court of Appeal on direct appeal which stated the

following:

> Defendant complains the trial court let the jury decide whether
> Ray-Bailey and Moon were accomplices rather than instruct sua
> sponte that Ray-Bailey and Moon were accomplices as a matter of
> law.  [FN 6]  We see no basis for reversal.

36

[FN 6]  The court instructed the jury: "Before you may consider the statements of testimony of Carrie Moon and Susan Ray-Bailey as evidence against defendant Boswell regarding the crimes, you must decide whether Carrie Moon and Susan Ray-Bailey were accomplices to those crimes.  A person is an accomplice if he or she is subject to prosecution for the identical crime charged against the defendant. Someone is subject to prosecution if . . . he or she personally committed the crime or if, one, he or she knew of the criminal purpose of the person who committed the crime, and, two, he or she intended to, and did in fact, aid, facilitate, and promote, encourage, or instigate the commission of the crime.  [¶]  The burden is on the Defendant Boswell to prove that it is more likely than not that Carrie Moon and Susan Ray-Bailey were an accomplice [*sic*]."

We will assume the contention is not forfeited by defendant's failure to pursue it in the trial court.  Our assumption does not mean we accept defendant's unfair accusation that the People have misrepresented the record.  The People say defendant agreed to the modified version of the accomplice instruction.  This statement is supported by the record, which shows the trial court said, "After discussions with counsel informally, it was agreed that the Court would insert the names of [Moon and Ray-Bailey] and limit the instruction to [defendant]."

As to Moon, defendant fails to show she was an accomplice as a matter of law.

Thus, in order to be an accomplice, Moon would have to be "liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."  (§ 1111.)

Defendant argues Moon was an accomplice because she (1) was charged as a defendant in the original complaint, and (2) avoided trial by pleading guilty to felony possession of narcotics.  However, the *only* charges against Moon in the original complaint were possession of methamphetamine (Health & Saf. Code, § 11377) and possession of a device used for ingesting a controlled substance (Health & Saf. Code, § 11364).  These were not identical to the offenses charged against defendant – (1) possession of methamphetamine for sale (Health & Saf. Code, § 11379); (2) sale of methamphetamine (Health & Saf. Code, § 11379); (3) maintaining a place for the sale or use of methamphetamine (Health & Saf. Code, § 11366); (4) possession of marijuana for sale (Health & Saf. Code, § 11359); and (5) possession of methamphetamine while armed with a loaded firearm (Health &

37

1    Saf. Code, § 11370.1, subd. (a).)

2    The evidence showed only that (1) Moon was in room 413 with
     methamphetamine and a pipe in her purse, and (2) she told police
3    she got the drugs from defendant and planned to "compensate" him
     in some way.  As a mere (unarmed) buyer, Moon was not liable to
4    prosecution for the identical offenses charged against defendant.  In
     narcotics cases, the purchaser is not an accomplice of the seller.
5    (People v. Mimms (1952) 110 Cal.App.2d 310, 314.)

6    Though not argued by defendant, we note that, technically, a buyer
     might be viewed as an aider and abettor of a seller's drug-selling
7    activity, which would make the buyer liable to prosecution for
     selling drugs.  However, in People v. Galli (1924) 68 Cal.App.
8    682, we explained why the buyer is not an accomplice of the seller.
     We adopted the reasoning of case law regarding the sale and
9    purchase of intoxicating liquors, i.e., in order to be an accomplice,
     "'[t]he abettor . . . must stand in the same relation to the crime as
10   the criminal – approach it from the same direction, touch it at the
     same point.  This is not the case with the purchaser of liquor.  His
11   approach to the crime is from the other side; he touches it at wholly
     another point . . . . The purchaser of liquor, by his offer to buy,
12   indulges the seller of the liquor to make the sale; but he can not be
     said to "assist" him in it.  The whole force, moral or physical, that
13   went to the production of the crime as such, was the seller's.'"  (Id.
     at p. 685.)
14
     Thus, Moon was not an accomplice as a matter of law.  Indeed, it
15   appears that, as a matter of law, she was *not* an accomplice.  Thus,
     defendant got better than he deserved when the court instructed the
16   jury it could find she was an accomplice.

17   As to Ray-Bailey, she was not an accomplice as a matter of law.
     Her status was in dispute.  Before trial, she denied any knowledge
18   or involvement in the criminal activity.  Then, at trial she took full
     responsibility, claiming the drugs were hers and she did not get
19   them from defendant.  Since there was a dispute about whether
     Ray-Bailey was an accomplice, the trial court properly left the
20   matter for the jury to determine.  (People v. Hoover (1974) 12
     Cal.3d 875, 880.)
21
     We conclude defendant fails to show any reversible error regarding
22   accomplice instructions.

23   (Slip Op. at p. 13-16.)

24          Claims based on instructional error under state law are not cognizable on federal habeas

25   review.  See Estelle, 502 U.S. at 71-72.  To receive federal habeas relief for an error in jury

26   instructions, Petitioner must show that the error so infected the entire trial that the resulting

                                            38

conviction violates due process.  See Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  "Due

process requires that criminal prosecutions 'comport with prevailing notions of fundamental

fairness' and that 'criminal defendants be afforded a meaningful opportunity to present a

complete defense.'" Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting California v.

Trombetta, 467 U.S. 479, 485 (1984)).  Additionally, in order to obtain federal habeas relief on

this claim, Petitioner "must show that the alleged instructional error had substantial and injurious

effect or influence in determining the jury's verdict."  Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir.

2009) (internal quotation marks and citations omitted), cert. denied, – U.S. –, 120 S.Ct. 2103,

176 L.Ed.2d 733 (2010).  "A substantial and injurious effect means a reasonable probability that

the jury would have arrived at a different verdict had the instruction been given." Id. (internal

quotation marks and citation omitted). In this case, the burden on Petitioner is especially heavy

where the alleged error involves the failure to give an instruction.  See id.  An omission or an

incomplete instruction is less likely to be prejudicial than a misstatement of law.  See Henderson,

431 U.S. at 155; see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

Under California law, a "conviction cannot be had upon the testimony of an accomplice

unless it be corroborated by such other evidence as shall tend to connect the defendant with the

commission of the offense."  Cal. Penal Code § 1111.  "An accomplice is . . . one who is liable to

prosecution for the identical offense charged against the defendant on trial in the cause in which

the testimony of the accomplice is given." Id.; see also Verlinde, 100 Cal. App. 4th at 1158, 123

Cal. Rptr. 2d 322.

Penal Code section 1111 "is a state law requirement that a conviction be based on more

than uncorroborated accomplice testimony . . . . As a state statutory rule, and to the extent that

the uncorroborated testimony is not 'incredible or insubstantial on its face,' the rule is not

required by the Constitution or federal law."  Laboa, 224 F.3d at 979 (citation omitted).  The

question of whether an individual is an accomplice with the meaning of Cal. Penal Code § 1111

"presents a factual question for the jury 'unless the evidence permits only a single inference.'

1   Thus, a court can decide as a matter of law whether a witness is or is not an accomplice only

2   when the facts regarding the witness's criminal culpability are 'clear and undisputed.'" People v.

3   Williams, 16 Cal. 4th 635, 679, 66 Cal. Rptr. 2d 573, 941 P.2d 752 (1997).

4        As the California Court of Appeal observed, there was evidence presented that Moon and

5   Ray-Bailey were not accomplices.  For example, testimony at trial indicated that initially Moon

6   told the agents that she was only present to return some video cassettes or some

7   videotapes/DVDs.  (See Reporter's Tr. at p. 233.)  The agent then testified that "after further

8   discussion, she admitted that the methamphetamine found in her purse was hers [and that] . . .

9   she indicated to me that the methamphetamine that was in her purse she had obtained from Mr.

10  Boswell."  (Id.)  Additionally, at trial, Moon testified that she did not get the methamphetamine

11  from the Petitioner.  (See id. at p. 172-73.)  Thus, there was clearly a factual issue regarding

12  whether Moon was an accomplice to Petitioner which required it to be a jury issue.  See Mimms,

13  110 Cal. App. 2d at 314, 242 P.2d 331.

14       Evidence at trial also indicated that Ray-Bailey told agents that she had no knowledge of

15  any illegal items that would possibly be in the room.  (See id. at p. 281.)  However, at trial, Ray-

16  Bailey indicated that everything in the hotel room was hers and that she was selling drugs for

17  equipment and that the drugs found were entirely hers.  (See id. at p. 349-53.)  Thus, as with

18  Moon, there was clearly a factual dispute regarding whether Ray-Bailey was an accomplice.

19  Therefore, Petitioner fails to show that his Constitutional rights were violated when the trial court

20  allowed the jury to decide whether Moon and Ray-Bailey were in fact accomplices rather than

21  decide as a matter of law that they were in fact accomplices and Petitioner fails to show that the

22  state court unreasonably applied clearly established federal law.

23       I.  Claim IX

24       Petitioner argues in Claim IX that the prosecutor committed misconduct during the course

25  of the trial and during closing argument.  Among the issues that Petitioner raises are the

26  following:  (1) improper insinuation that Moon and Ray-Bailey feared Petitioner; (2) arguing

40

without evidentiary support that Moon and Ray-Bailey feared being labeled as a snitch; (3) improper to argue that drug dealers possess guns and kill each other; (4) improper to argue that people do not confess at trial without some ulterior motive; (5) misstatement of the standards of reasonable doubt and abiding conviction; (6) improper to urge the jurors to be partisans; (7) improper to argue that Ray-Bailey lied and offering a personal opinion on her credibility; (8) improper to argue that Ray-Bailey could not obtain drugs without money or obtain guns from a flea market and that her story was laughable; (9) improper to argue that it takes time to think up a good lie and that Petitioner was a "big fish" who used people to do his bidding; (10) improper to argue that only men's wear was found in the hotel room; (11) improper to ask Moon about statements she made to her probation officer; (12) improper to use drug addiction to impeach a witness's credibility; and (13) improper to argue that a lack of evidence proves that Petitioner is guilty.  The California Court of Appeal analyzed Petitioner's prosecutorial misconduct arguments as follows on direct appeal:

> Defendant claims the judgment should be reversed because the prosecutor committed prejudicial misconduct in questioning witnesses and in closing argument to the jury.  We disagree.
>
> Claims of prosecutorial misconduct are forfeited if the defendant failed to object in the trial court, unless a timely curative admonition would not have alleviated any potential harm.  (People v. Farnam (2002) 28 Cal.4th 107, 199-200.)  In order to obtain reversal under the federal Constitution, any prosecutorial misconduct must be so egregious that it results in unfairness and constitutes a denial of due process.  (People v. Prieto (2003) 30 Cal.4th 226, 260 (Prieto).)  Prosecutorial conduct that does not render a trial fundamentally unfair is misconduct under state law only when it attempts to persuade the trier of fact with reprehensible or deceptive methods.  (Ibid.)
>
> We consider each claimed instance of misconduct.
>
> A.  Questioning Witnesses
>
> Defendant says the prosecutor committed prejudicial misconduct by posing questions to Moon and Ray-Bailey, without evidentiary basis, insinuating they were afraid of defendant.  We conclude defendant fails to show grounds for reversal.

Defendant cites from Moon's trial testimony:

"Q:  You told your probation officer you didn't want to testify today; is that correct?
"A:  I don't believe that I should be testifying at all and I – yeah, I don't quite understand why I am, you know, why I was subpoenaed –
"Q:  Ma'am, I just want you to answer the question.
"A:  Okay.
"Q:  Did you tell your probation officer you don't want to testify?
"A:  I told the probation officer – yeah, I did.
"Q:  Did you tell your probation officer you had been threatened?
"A:  No.  I said that if I was going to be in a situation where I was going to be testifying against, you know, not particularly the defendant, but anybody, then, you know, you would think that like the D.A. or whoever it is that is wanting you to do that would, you know, try to talk to you before the matter or before the trial or whatnot, and when you're a witness, you know, you ought to take certain precautions, I guess, you know.
"Q:  And yesterday you had a meeting with the D.A.; is that correct?
"A:  I didn't go."
Defendant cites from Ray-Bailey's testimony:
"Q:  Are you afraid of defendant Boswell?
"A:  No, I am not."

Defendant claims these questions were improper because the prosecutor never showed any evidence that the witnesses feared or had been threatened by defendant.

It is misconduct for a prosecutor to ask questions which suggest facts adverse to the defendant without a good faith belief that such facts are true.  (People v. Bolden (2002) 29 Cal.4th 515, 562.)  However, defendant failed to object in the trial court, hence the prosecutor was not put to the task of proving good faith, and we cannot ascertain the prosecutor lacked good faith.  We reject defendant's unsupported argument on appeal that objection in the trial court would have been futile or that the failure to object constituted ineffective assistance of counsel.

Accordingly, this contention is forfeited by defendant's failure to object in the trial court.

B.  Comments During Closing Argument

1.  Witnesses' Fear of Defendant

Defendant claims the prosecutor committed misconduct by arguing to the jury, without evidentiary support, that the witnesses were afraid of defendant.  We see no basis for reversal.

42

Thus, the prosecutor argued to the jury:

"All of the evidence obtained on November 16th makes Defendant Boswell big fish.  He is the leader, he is the drug dealer and what they did during the trial is try to convince you that he is not involved.  He is the only one that benefits when Defendant Ray-Bailey takes the stand and falls on the sword and says, 'It is all me.'  He is the only one that benefits when Carrie Moon changes her story and says, "No, I got the drugs from some Mexican guy in Willows and I don't know when, but I had it on my person and I was just there to drop off videos.'  Don't let them get away with it.  Don't let Defendant Boswell walk because Carrie Moon is afraid of getting a rat jacket, she is being afraid of being labeled as a snitch.  And the reason you know that is true is because she is a drug user, if the word gets out that she rats and testifies against the people she buys drugs from –

"[Ray-Bailey's attorney]:  I am going to object to this line of argument.  There is nothing in the evidence that would support –

"THE COURT:  Sustained.

"[Defendant's attorney]:  I join.

"[Smith's attorney]:  I join.

"THE COURT:  Sustained.

"[Prosecutor]:  Don't forget that changing her story only benefits Defendant Boswell.  [¶]  And the same goes for Defendant Ray-Bailey.  The only one who benefits is Defendant Boswell when she gets up and tries to fall on the sword.

"Now let's talk about her statement for a minute.  Here is how you know that it is not the truth, that it is inconsistent and doesn't make sense.  Her story is:  Yesterday, I was selling drugs to get stuff to take it to a flea market and sell it to get money.  Well, that doesn't make any sense because, A, 50 grams of methamphetamine, how does she come across in the first place if she has got no money?  You heard from Agent Beeman that a gram would cost you anywhere from $50 to $75.  Where did she get the money from [sic] all of those drugs to sell it for stuff?  It doesn't make sense.  Her story is laughable, it doesn't make any sense.  She says she got the guns from a flea market.  That is laughable.  They don't sell handguns at flea markets.  She wants you to believe that she has had divine intervention and that she has had a change of heart.  That is all too convenient.  It is all too – doesn't make any sense.  She is scared of Defendant Boswell.  She won't –

"[Defendant's attorney]:  Objection, Your Honor, there is no evidence in the record whatsoever to support that.

"THE COURT:  Overruled.

"[Prosecutor]:  She is scared of Defendant Boswell because he is the one that benefits, he is the big time drug dealer.  She doesn't want to get up on the stand and point the finger at him.  In fact, she saves face, she makes herself out to be the hero or whatever she is trying to do if she saves Boswell and falls on the sword herself.  That is how you know her statement yesterday just doesn't add up."

43

To the extent defendant did not object to these comments, his challenge to them is forfeited.  (Farnam, supra, 28 Cal.4th at pp. 199-200.)  In any event, they were fair commentary on reasonable inferences to be drawn from the evidence.  (Id. at p. 200; People v. Williams (1997) 16 Cal.4th 153, 221.)  Thus, the witnesses' fear of defendant was a reasonable inference from the evidence that (1) he was armed with firearms; (2) the witnesses recanted prior statements incriminating defendant (which benefited only defendant); and (3) one witness admitted she told her probation officer she did not want to testify.

This same reasonable inference applies to the objection which the trial court overruled, regarding the prosecutor's remark that Ray-Bailey was afraid of defendant.

As to the comment about what would happen to Moon if word got out that she was a snitch, the trial court sustained objections to that comment, and defendant fails to show grounds for reversal.  Defendant did not request that the jury be admonished.  The jury instructions included the usual instruction that the attorney's remarks are not evidence, and the jurors must decide the case based on the evidence.  The prosecutor's comment was not egregious, deceptive or reprehensible so as to constitute grounds for reversal.  (Prieto, supra, 30 Cal.4th at p. 260.)

2.  Other Comments

Defendant additionally complains of the following comments by the prosecutor during closing argument:

– "It is common knowledge that drug dealers will kill each other over drugs, you got to be able to protect yourself, that is why they have the weapons, and you know that is true because this one was loaded, and it was in a place that you couldn't see it, if the dresser was closed.

– "Mr. Thompson [defendant's attorney] wants you to believe that the statement from the stand from Ms. Ray-Bailey was a sincere, a real confession.  People don't confess on the stand unless they have a reason to do it.  And it is not simply because she wants to fall on the sword, it is because she wants to help Defendant Boswell."

– "The Judge is going to tell you reasonable doubt is that proof that leaves you with an abiding conviction that the charge is true.  That means a week from now you can look yourself in the mirror and say, 'I still think she [sic] did it.  I still think the People made their case.  I still think it is true.'  That is an abiding conviction, something a week from now you can look back and say, "Yeah, I agree, I still think that way.'  [¶]  It [the jury instruction on reasonable doubt] goes on to say you need not eliminate all possible doubt, but as you know, nothing is perfect, there is always

44

going to be a 'what if,' but reasonable doubt is not something based on imaginary or hypothetical or chance.  It is something that is real, something that is reasonable.  We'll talk about, a little bit more about [*sic*] what is reasonable and what is unreasonable in this case."

– "So it is my burden as your representative of the People to prove each one of these elements [of each count]."

– "I know you are probably tired, it is not very interesting, but you're the voice of the community here, you decide how much law enforcement you want in your community, you decide if this behavior is acceptable and legal or if it is not.  So your part here is of vast importance.  We couldn't do this, we couldn't have our system of justice, we couldn't view and have the exercise of rights without you.  You make all of the difference, and like I said, you are the voice of the community.  You decide how much law enforcement you want."

– "Be the voice of the community.  Don't let Defendant Boswell get away with using these other two [codefendants] anymore."

Defendant's challenge to these comments is forfeited due to his failure to object to them in the trial court.  (Farnam, supra, 28 Cal.4th at p. 199-200.)  We reject defendant's unsupported argument that his failure to object should be excused because contemporaneous objections could not have remedied the damage caused by the prosecutor's comments.  We also reject defendant's argument that his attorney's failure to object must be deemed ineffective assistance of counsel.

Though we need not go further, we note defendant fails to show that the cited comments constitute prejudicial misconduct by the prosecutor.  Defendant tries to build a case by mischaracterizing the comments.  For example, he argues the prosecutor misstated the law of reasonable doubt by suggesting the jurors need remain confident of a guilty verdict only for one week.  It is defendant who misstates the prosecutor's argument.  We also reject defendant's interpretation of the comments as urging the jurors to act as partisans allied with the prosecution or urging them to convict defendant in order to prevent future crime.  In any event, as we have stated, defendant forfeited his contention by failing to object in the trial court.

We conclude defendant fails to show grounds for reversal based on prosecutorial misconduct.

(Slip Op. at p. 18-26.)

        Respondent argues that Petitioner's prosecutorial misconduct arguments are procedurally

45

1  defaulted because he either failed to file an objection at trial or failed to raise these issues on

2  direct appeal.  However, in the interests if judicial economy, and because all of Petitioner's

3  arguments within Claim IX are without merit, the procedural default argument raised by

4  Respondent within this Claim will not be addressed.  See Lambrix, 520 U.S. at 525 (1997);

5  Franklin, 290 F.3d at 1232 ("Procedural bar issues are not infrequently more complex than the

6  merits issues presented by the appeal, so it may well make sense in some instances to proceed to

7  the merits if the result will be the same.").

8      A criminal defendant's due process rights are violated if prosecutorial misconduct renders

9  a trial "fundamentally unfair."  Drayden v. White, 232 F.3d 704, 713 (9th Cir. 2000) (citing

10  Darden v. Wainright, 477 U.S. 168, 183 (1986)).  A habeas petition will be granted for

11  prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to

12  make the resulting conviction a denial of due process."  Darden, 477 U.S. at 181 (internal

13  quotation marks and citation omitted).  Isolated comments by a prosecutor may be cured by jury

14  instructions.  See Sassounian v. Roe, 230 F.3d 1097, 1106-07 (9th Cir. 2000); see also Hall v.

15  Whitley, 935 F.2d 164, 165-66 (9th Cir. 1991) ("Put in proper context, the comments were

16  isolated moments in a three day trial.")  A claim of prosecutorial misconduct is analyzed under

17  the prejudice standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993).  See Karis v.

18  Calderon, 283 F.3d 1117, 1128 (9th Cir. 2002) (stating that a claim of prosecutorial misconduct

19  is analyzed under the standard set forth in Brecht).  Specifically, the inquiry is whether the

20  prosecutorial misconduct had a substantial and injurious effect on the jury's verdict.  See

21  Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995) (finding no prejudice from prosecutorial

22  misconduct because it could not have had a substantial impact on the verdict under Brecht).

23      Additionally, with respect to improper prosecutorial comments during closing arguments,

24  the law is settled that under this due process standard, "[c]ounsel are given latitude in the

25  presentation of their closing arguments, and the courts must allow the prosecution to strike hard

26  blows based on the evidence presented and all reasonable inferences therefrom."  Ceja v.

1   Stewart, 97 F.3d 1246, 1253-54 (9th Cir. 1996) (internal quotation marks omitted).  A reviewing

2   court should consider a prosecutor's allegedly improper statements in light of the realistic nature

3   of trial closing arguments.  "Because 'improvisation frequently results in syntax left imperfect

4   and meaning less than crystal clear,' 'a court should not lightly infer that a prosecutor intends an

5   ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy

6   exhortation, will draw that meaning from the plethora of less damaging interpretations.'"

7   Williams v. Borg, 139 F.3d 737, 744 (9th Cir. 1998) (quoting Donnelly v. DeChristoforo, 416

8   U.S. 637, 647 (1974)).  A challenged or offering statement must also be evaluated in the context

9   of the entire trial, as well as the context in which it was made.  See Boyde v. California, 494 U.S.

10   370, 384-85 (1990).

11                    i.  Insinuating Moon and Ray-Bailey feared Petitioner

12          Petitioner first argues that the prosecutor committed misconduct when he insinuated that

13   Moon and Ray-Bailey feared Petitioner.  During trial, the prosecutor asked Moon if she was

14   threatened by Petitioner and asked Ray-Bailey if she was afraid of Petitioner.  (See Reporter's Tr.

15   at p. 180, 355.)

16          Petitioner is not entitled to federal habeas relief on this argument.  The prosecutor was

17   permitted to ask these questions as he is allowed to make reasonable inferences from the

18   evidence.  See Duckett v. Godinez, 67 F.3d 734, 742 (9th Cir. 1995).  Moon changed her story

19   with respect to her previous statements that she gave to police that had implicated Petitioner.

20   Furthermore, Moon told her probation officer that she did not want to testify at trial and that

21   certain "precautions" should be taken.  (See Reporter's Tr. at p. 180-81.)  Ray-Bailey also

22   changed her story at trial from what she previously told the police.  Thus, the prosecutor was

23   permitted to inquire into possible reasons for this change in testimony.

24          Additionally, Petitioner failed to show that the prosecutor's questions and comments had

25   a substantial and injurious effect on the jury's verdict.  The jury was specifically instructed that

26   the statements from the attorneys were not evidence and that they were to decide the facts based

solely on the evidence.  (See Reporter's Tr. at p. 428 ("Nothing that the attorneys say is evidence. In their opening statements and closing arguments the attorneys discuss the case.  But their remarks are not evidence.  Their questions are not evidence.  Only witnesses' answers are evidence.  The attorneys' questions are significant only if they help you to understand the witnesses' answers.  Do not assume that something is true just because one of the attorneys asks a question that suggested it was true.").)  The jury is deemed to have followed these instructions. See Weeks v. Angelone, 528 U.S. 225, 234 (2000).  Accordingly, for the foregoing reasons, this argument does not merit federal habeas relief.

> ii. Arguing without evidentiary support that Moon and Ray-Bailey feared being labeled as a snitch

Next, Petitioner asserts that the prosecutor committed misconduct when he stated during closing argument that Moon and Ray-Bailey were afraid of being labeled as snitches or "rat jackets" from incriminating Petitioner.  (See Pet'r's Pet. at p. 86.)  Petitioner has failed to show that he is entitled to federal habeas relief on this argument.  First, Petitioner's counsel objected to the prosecutor's statements in the closing argument which stated that Moon feared being labeled a "rat jacket."  (See Reporter's Tr. at p. 395.)  The trial court sustained the objection.  (See id.). After the objection was sustained by the trial court, the prosecutor stated the following:

> Don't forget that changing her story only benefits Defendant Boswell.  And the same goes for Defendant Ray-Bailey.  The only one who benefits is Defendant Boswell when she gets up and tries to fall on the sword.

(Id.)  As previously stated, counsel is permitted to strike hard blows against the evidence as well as allowed to argue reasonable inferences therefrom.  See Ceja, 97 F.3d at 1253-54.  This statement was a permitted inference based on the evidence presented at trial.  Moon changed her story that she had previously given police which implicated Petitioner.  Furthermore, Ray-Bailey also changed her story that she had previously rented the room for Petitioner when she testified at trial.  Accordingly, the prosecutor was permitted to engage in reasonable inferences why this

1    change occurred.

2         Furthermore, Petitioner failed to show that the statement had a substantial and injurious

3    effect on the jury's verdict.  As previously stated, the jury was specifically instructed that it was

4    to base its decision on the evidence and that attorney statements were not evidence.

5    Additionally, the evidence produced at trial implicated Petitioner in the crimes, the prosecutor's

6    statements notwithstanding.  Therefore, Petitioner is not entitled to federal habeas relief on this

7    argument.

8              iii.    Arguing that drug dealers possess guns and kill each other

9         Petitioner also argues as follows:

10            The prosecutor committed misconduct by telling the jury that it is
              common knowledge that drug dealers kill each other over drugs,
11            and that is why the guns are there and "you know that is true
              because this one was loaded and it was in a place where you
12            couldn't see it if the dresser was closed.  There was no evidence
              whatsoever that anyone ever brandished a gun or ever even
13            considered killing anyone over drugs in this case, and there was no
              expert testimony about why a drug dealer or anyone else has a gun.
14            No one was ever even seen with a gun in this case and the guns
              were legally owned and possessed by the legal renter of that room,
15            and the gun was kept in a night stand drawer next to her bed.

16   (Pet'r's Pet. at p. 89-90.)  Counsel are allowed to strike hard blows based on the evidence and

17   allowed all reasonable inferences therefrom.  See Ceja, 97 F.3d at 1253-54.  The prosecutor's

18   statement did not amount to prosecutorial misconduct as it was based on an inference from the

19   evidence produced at trial.  Significant quantities of drugs were found in the hotel room.

20   Additionally, firearms, including one loaded weapon was found in the hotel room where the

21   drugs were found.  Furthermore, the jury was specifically instructed that it had to base its verdict

22   on the evidence produced at trial and that the statements of the attorneys were not evidence.

23   Accordingly, for the foregoing reasons, Petitioner fails to show that he is entitled to federal

24   habeas relief on this prosecutorial misconduct argument.

25              iv.    Arguing that people do not confess at trial without some ulterior motive

26         Next, Petitioner asserts that, "[w]ithout any evidence, let alone expert psychological

                                          49

opinion evidence the prosecutor told the jurors regarding Mrs. Ray Bailey's testimony that people do not confess during a trial unless it is for some ulterior motive and the confession is false." (Pet'r's Pet. at p. 89.)  The prosecutor is permitted to strike hard blows against the defendant in his closing argument.  See Ceja, 97 F.3d at 1253-54.  The prosecutor's statement related to Ray-Bailey's testimony and was an inference why she changed her story at trial from what she had previously told the police.  Her prior statement implicated Petitioner.  In light of the permissible inferences that a prosecutor is allowed during closing argument, Petitioner failed to show that the prosecutor committed misconduct.

Furthermore, even assuming *arguendo* that the prosecutor's statement rose to the level of misconduct, Petitioner failed to show prejudice.  The jury was specifically instructed that it was to base its decision on the evidence produced at trial and that the attorneys statements were not to be considered evidence.  The jury is deemed to have followed these instructions.  See Weeks, 528 U.S. at 234.  For the foregoing reasons, Petitioner is not entitled to federal habeas relief on this prosecutorial misconduct argument.

v.    Misstating the standards of reasonable doubt and abiding conviction

Petitioner next asserts that the prosecutor misstated the concepts of reasonable doubt and abiding conviction to the jury during his closing argument.  More specifically, Petitioner complains that the following argument by the prosecutor amounted to misconduct:

> There is going to be an instruction about reasonable doubt.  Now defense counsel, they are all going to get up and talk about reasonable doubt.  No defense attorney is going to get up and say, "Hey, the People have a great case" because that is not their job, that is not why they here.
>
> The judge is going to tell you reasonable doubt is that proof that leaves you with an abiding conviction that the charge is true.  That means a week from now you can look yourself in the mirror and say, "I still think she did it.  I still think the People made their case. I still think it is true."  That is an abiding conviction, something a week from now you can look back and say, "Yeah, I agree, I still think that way."
>
> It goes on to say you need not eliminate all possible doubt, but as

50

1   you know, nothing is perfect, there is always going to be a "what
    if," but reasonable doubt is not something based on imaginary or
2   hypothetical or chance.  It is something that is real, something that
    is reasonable.  We'll talk about, a little bit more about what is
3   reasonable and what is unreasonable in this case.

4   (Reporter's Tr. at p. 386.)  Petitioner argues that these statements by the prosecutor during

5   closing argument were improper because they reduced the prosecutor's burden by telling the jury

6   they only had to remain convinced of the verdict for one week.  However, Petitioner misstates the

7   prosecutor's argument.  The statement did not tell the jury it only had to remain convinced of its

8   verdict for one week.

9        Furthermore, the jury was specifically instructed by the trial judge on the reasonable

10   doubt standard; specifically, the jury was instructed:

11   A defendant in a criminal case is presumed to be innocent.  This
     presumption requires the People to prove each element of the crime
12   and special allegation beyond a reasonable doubt.  Whenever I tell
     you the People must prove something, I mean they must prove it
13   beyond a reasonable doubt.

14   Proof beyond a reasonable doubt is proof that leaves you with the
     abiding conviction that the charge is true.  The evidence need not
15   eliminate all possible doubts because everything in life is open to
     some possible or imaginary doubt.
16
     In deciding whether the People have proved this case beyond a
17   reasonable doubt, you must impartially compare and consider all of
     the evidence that was received throughout the entire trial.  Unless
18   the evidence proves the defendant guilty beyond a reasonable
     doubt, they are entitled to an acquittal and you must find them not
19   guilty.

20   (Reporter's Tr. at p. 427.)  Petitioner has no quarrel with the reasonable doubt instruction given

21   by the trial judge.  Furthermore, the trial judge specifically instructed the jury that if the

22   attorneys' comments on the law conflicted with his instructions, the jury was to follow the

23   judge's instructions.  (See id. at p. 425.)  The jury is deemed to have followed these instructions

24   by the trial judge.  See Weeks, 528 U.S. at 234.

25        For the foregoing reasons, Petitioner failed to show that he is entitled to federal habeas

26   relief on this procedural misconduct argument.

51

1              vi.       Urging the jurors to be partisans

2          Petitioner also argues that the prosecutor improperly urged the jurors during his closing

3    argument to be partisans.  Petitioner objects to the following statement by the prosecutor during

4    closing argument, "So it is my burden as your representative of the People to prove each one of

5    these elements."  (Reporter's Tr. at p. 387.)  Petitioner asserts that this statement "suggested that

6    the jurors were allied with the prosecution instead of serving as a neutral and impartial judges of

7    the facts."  (Pet'r's Pet. at p. 91.)

8          As recently explained by the Ninth Circuit:

9          "The rule that a prosecutor may not express his personal opinion of
     the defendant's guilt or his belief in the credibility of witnesses is
10   firmly established."  United States v. McKoy, 771 F.2d 1207,
     1210-11 (9th Cir. 1985); see also United States v. Kerr, 981 F.2d
11   1050, 1053 (9th Cir. 1992) ("A prosecutor has no business telling
     the jury his individual impressions of the evidence.").  "Improper
12   vouching occurs when the prosecutor places the prestige of the
     government behind the witness by providing personal assurances
13   of the witness's veracity."  Id. (brackets and internal quotation
     marks omitted).  Improper vouching also occurs where the
14   prosecutor suggests that the testimony of government witnesses is
     supported by information outside that presented to the jury.  United
15   States v. Younger, 398 F.3d 1179, 1190 (9th Cir. 2005).  "We have
     also identified improper vouching and related misconduct in a
16   broader range of circumstances.  A prosecutor may not, for
     instance, express an opinion of the defendant's guilt, denigrate the
17   defense as a sham, implicitly vouch for a witness's credibility, or
     vouch for his or her own credibility."  United States v. Hermanek,
18   289 F.3d 1076, 1098 (9th Cir. 2002) (internal citations omitted).

19   United States v. Wright, 625 F.3d 583, 610 (9th Cir. 2010) (emphasis in original).  The

20   prosecutor's statement to the jury that he was a representative of the people did not amount to

21   improper vouching.  The prosecutor did not personally assure the integrity of witnesses nor did

22   he suggest that the testimony of government witnesses was supported by information outside that

23   presented to the jury.  Rather, the prosecutor stated that as a representative of the people, he had

24   to prove all of the elements of the charged crimes.  Cf. People v. Crabtree, 169 Cal. App. 4th

25   1293, 1320, 88 Cal. Rptr. 3d 41 (2009) (finding no improper vouching when prosecutor stated he

26   was a representative of the State of California three times); see also Amado v. Dickinson, Civ.

No. 08-2082, at *11 (C.D. Cal. Nov. 5, 2010) (finding no misconduct where prosecutor told jury

he represented the People fo the State of California because the prosecutor did not personally

assure the integrity or credibility of the evidence nor did he suggest that he had any information

withheld from the jury), report and recommendation adopted by, 2011 WL 280982 (C.D. Cal.

Jan. 24, 2011).

Furthermore, the trial judge specifically instructed the jury that when an attorneys'

statements conflicted with the court's instructions, the jury was to follow the court's instructions.

Among the court's instructions were that the attorneys' statements were not evidence.  The jury

is deemed to have followed these instructions.  See Weeks, 528 U.S. at 234.  Accordingly, for the

foregoing reasons, Petitioner is not entitled to federal habeas relief on this prosecutorial

misconduct argument.

vii.    Offering personal opinion on Ray-Bailey's credibility

Next, Petitioner asserts that:

> The prosecutor, without any evidence, told the jury his own
> opinion about Ray-Bailey's testimony and that "he was shocked by
> Ray-Bailey's testimony and they should have been too.  That her
> story made no sense and it was just some story that she thought
> of."

(Pet'r's Pet. at p. 93-94.)  During closing argument, the prosecutor stated as follows:

> Now, during the course of this trial, the defendant has an absolute
> right not to testify.  But Ms. Bailey waived that right and decided
> she wanted to.  I didn't know what she was going to say.  Frankly, I
> was shocked and you should have been, too.  Her story makes no
> sense.  The story she told on the stand is the story that she thought
> of and waited months to tell somebody to.  It is not what she told
> the night in question.  Right off the bat, without any time to think
> about it.  It is the story she has had some time to think about and go
> through, and we'll need to talk about her statement and why it does
> not make any sense in a second.

(Reporter's Tr. at p. 392-93.)  During the trial, the following colloquy took place between the

prosecutor and Agent Beeman:

> Q:  You have indicated throughout your testimony that defendant

1    Boswell and defendant Smith were in the hotel room when you
arrived there.  At any point during your search did Ray-Bailey
2    arrive?
A:  Yes.
3    Q:  When was that?
A:  That was while we were searching the van down on the parking
4    lot.
Q:  And who initially made contact with her?
5    A:  Initially, Agent Norwood recognized her from her – his earlier
surveillance.  She was walking through the parking lot next to us
6    and he initially made contact with her.
Q:  Did you talk with the defendant Ray-Bailey?
7    A:  Yes, I did.
Q:  Did you advise her of her Miranda rights?
8    A:  Yes, I did.
Q:  Did she waive those rights and agree to talk with you?
9    A:  Yes, she did.
Q:  Who according to defendant Ray-Bailey rented the room?
10   A:  Accordingly to Ms. Bailey, she had rented room 413.
Q:  Did she tell you whether or not she brought any food to that
11   location?
A:  Yes.
12   Q:  What was her response?
A:  She indicated that she had been coming and going, bringing
13   food and other items into the room.
Q:  What kind of other items, laundry?
14   A:  Laundry, linens, things of that nature.
Q:  Did you ask defendant Ray-Bailey about the computer
15   equipment, the monitor and the cameras?
A:  Yes.
16   Q:  What did she indicate was her role?
A:  She indicated that she had assisted in setting up the computer.
17   She referred to it as "computer equipment."
Q:  Did defendant Ray-Bailey admit that she knew about the drugs
18   and the other illegal items in the room?
A:  No, she indicated she had been there but that she had no
19   knowledge of any illegal items that would possibly be in the room.
Q:  Did you ask defendant Ray-Bailey how much of her statement
20   to you was the truth and how much was not?
A:  Yes.
21   Q:  Can you demonstrate, how did that question go?
A:  Essentially I took a piece of paper, like I took a piece of paper,
22   drew a line like this, put a line there, a line there, put a zero here
and a hundred there.  I asked her basically, if this line meant she
23   was telling zero percent of the truth or a hundred percent of what
she was telling me was the truth, where would her statement fall
24   within this scale.
Q:  And what was her response.
25   A:  She pointed to right here and indicated maybe 90 percent.
Q:  So she indicated approximately ten percent of what she was
26   telling you wasn't the truth?

54

1          A:  Correct.

2   (Id. at p. 280-82.)  On direct testimony, Ray-Bailey testified as follows:

3          I have a very bad meth problem, me and my husband we were
           having marital problems.  I rented a hotel room to store some stuff
4          so I could sell and move back to Texas with my family so I could
           start my life over there.  Everything in that room was mine with the
5          exception – well, you know, like clothes, stuff like that were my
           husband's, but I hardly ever stayed there.  Actually I was mostly
6          there in and out because I was trying to take care of my kids at
           home and work and just because there were so many people in and
7          out of our house that used and stuff was winding up stolen all of
           the time, and I just, and I just couldn't keep anything to be able to
8          take it anywhere, to the flea market or anything, to be able to sell it.
           And so I thought, well, okay, I'll just rent this room, you know.  I
9          had won some money at the Casino and I, okay, I'll just get it all
           settled away and then I'll get my tickets, my airline tickets, and fly
10         back home with the kids and I'll just start over.  You know.  I was
           running away.
11
           And the only thing I can say is that divine intervention landed me
12         in jail and that is the best place for me, it has been for these last
           five months, it saved my life and it has probably saved my life – it
13         saved the life of my children.  And I just want you all to know that
           even though I have friends visiting there at various times or people
14         coming in to buy equipment and stuff, it was just that I was just so
           into my addiction that I didn't know what to do.
15

16  (Reporter's Tr. at p. 349-50.)  On cross-examination, Petitioner's counsel questioned Ray-Bailey

17  and she testified that the guns and narcotics found in the room were hers and that she was trading

18  drugs for equipment.  Furthermore, she stated that the statement she had previously given to the

19  police was different than her testimony at trial in that her previous statement indicated that

20  Petitioner had something to do with the room.  When the prosecutor cross-examined Ray-Bailey,

21  she testified that she had previously told the police that she rented the hotel room for Petitioner.

22       "The rule that a prosecutor may not express his personal opinion of the defendant's guilt

23  or his belief in the credibility of witnesses is firmly established."  United States v. Wright, 625

24  F.3d 583, 610 (9th Cir. 2010) (internal quotation marks and citations omitted); see also, United

25  States v. Kerr, 981 F.2d 1050, 1053 (9th Cir. 1992) ("A prosecutor has no business telling the

26  jury his individual impressions of the evidence.").  In this case, the fact that the prosecutor

55

expressed his personal shock at Ray-Bailey's testimony at trial was improper.  By doing so, the

prosecutor impermissibly expressed his personal opinion on the credibility of Ray-Bailey's trial

testimony.  Nevertheless, this does not automatically mean that Petitioner is entitled to federal

habeas relief on this argument.  Petitioner must show that the prosecutor's statement so infected

the trial with unfairness as to make the resulting conviction a denial of due process.  See Darden,

477 U.S. at 181.  It is necessary to place the prosecutor's improper remarks in context and

evaluate several factors in determining whether a due process violation occurred.  In Darden, 477

U.S. at 181-82, the Supreme Court listed several factors to determine whether a due process

violation occurred; specifically:  (1) whether the prosecutor's argument manipulated or misstated

the evidence; (2) whether the jury was instructed that their decision was to be based on the

evidence and the arguments of counsel were not evidence; and (3) the weight of the evidence

against a petitioner.

When placed in the context of the entire three-day trial, the remark by the prosecutor did

not so infect the trial with unfairness thereby violating Petitioner's due process rights.  The

prosecutor's comment that he was personally shocked by Ray-Bailey's testimony was isolated.

See Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987) (holding fact improper comment is

"single, isolated incident" is relevant to assessment of misconduct claim).  Furthermore, the jury

was specifically instructed that the attorneys's statements are not evidence.  See Drayden, 232

F.3d at 713 (rejecting prosecutorial misconduct claim in part because court had instructed the

jury that the attorneys' statements are not evidence).  Finally, the case against Petitioner was not

based solely on Ray-Bailey's testimony.  Among some of the other pieces of evidence that

implicated Petitioner was the fact that he was found in the room with significant quantities of

individually packaged drugs as well as firearms.  Only men's wear was found in the hotel room

and Petitioner was the only male found in the hotel room.  The room included sophisticated

electrical equipment such as police scanners.  Moon's prior statements to the police also

implicated Petitioner.  Accordingly, the case against Petitioner was not weak.  Therefore, even

1  though the prosecutor's statement of personal shock of Ray-Bailey's testimony was improper, it

2  did not rise to the level of a claim warranting federal habeas relief.

3               viii.    Arguing that Ray-Bailey could not obtain drugs without money or obtain
                         guns from a flea market and that her story was laughable
4

5        Next, Petitioner argues that the prosecutor committed misconduct when he said that Ray-

6  Bailey's story was laughable.  Specifically, Petitioner argues the following statement from the

7  prosecutor during closing argument amounted to misconduct:

8               And the same goes for Defendant Ray-Bailey.  The only one who
                benefits is Defendant Boswell when she gets up here and tries to
9               fall on the sword.

10              Now, let's talk about her statement for a minute.  Here is how you
                know it is not the truth, that it is inconsistent and doesn't make
11              sense.  Her story is:

12              Yesterday, I was selling drugs to get stuff to take it to a flea market
                to sell it to get money.  Well, that doesn't make any sense because,
13              A, 50 grams of methamphetamine, how does she come across in
                the first place if she has got no money?  You heard from Agent
14              Beeman that a gram would cost you anywhere from $50 to $75.
                Where did she get the money from all of those drugs to sell it for
15              stuff?  It doesn't make sense.  Her story is laughable, it doesn't
                make any sense.  She says she got the guns from a flea market.
16              That is laughable.  They don't sell handguns at flea markets.  She
                wants you believe that she has had divine intervention and that she
17              has had a change of heart.  That is all too convenient.  It is all too –
                doesn't make sense.
18

19  (Reporter's Tr. at p. 396.)  The prosecutor is entitled to strike hard blows against the defense in

20  his closing argument.  See Ceja, 97 F.3d at 1253-54.  Furthermore, he is entitled to reasonable

21  inference based on the evidence.  See id.

22       Ray-Bailey gave a completely different story to the police when the hotel room was

23  raided when compared to her trial testimony.  Accordingly, upon considering the closing

24  argument in its entire context, this statement did not amount to misconduct.  Rather, the

25  prosecutor was permitted reasonable inferences of why her trial testimony did not make sense as

26  compared to the statements she made to the police upon her arrest which implicated Petitioner.

Furthermore, as previously stated, the jury was specifically instructed to base its decision on the evidence produced at trial and that the attorneys' statements were not evidence.  For these reasons, Petitioner is not entitled to federal habeas relief on this argument.

        ix.     Arguing that it takes time to think up a good lie and that Petitioner was a "big fish" who used people to do his bidding

Next, Petitioner asserts that:

> The prosecutor without any expert evidence of any kind tells the jurors what it takes to think up a really good lie, that "in order to think up a really good lie, something to pass, and something that sounds believable, they have to have time, and what do defendant Boswell and Moon have?  Five months."

(Pet'r's Pet. at p. 97.)  Put into context, Petitioner objects to the following argument by the prosecutor during his closing:

> She [Ray-Bailey] is scared of Defendant Boswell because he is the one that benefits, he is the big time drug dealer.  She doesn't want to get up on the stand and point the finger at him.  In fact, she saves face, she makes herself out to be the hero or whatever she is trying to do if she saves Boswell and falls on the sword herself.  That is how you know her statement yesterday just doesn't add up.  It doesn't make any sense.  If she needed money to get to Texas, she had $4,000 sitting on the table.  Why was she still in Corning?  Well, the answer was that $4,000 wasn't hers and her story doesn't add up.  And like I said, people, in order to think up a really good lie, something to pass and something that sounds believable, they have to have time.  And what do Defendant Boswell and Carrie Moon have?  Five months.  But on the night this all went down, when they didn't have time to think up a lie or a good story they think the cops would buy, all fingers and all evidence pointed at Defendant Boswell as the big fish, as the big time drug dealer who is running the show.

(Reporter's Tr. at p. 396-97.)  The quoted argument above did not amount to prosecutorial misconduct.  It was a permissible inference.  The prosecutor is entitled to wide latitude to make such an argument during closing arguments.  The evidence indicated that Ray-Bailey and Moon changed their original stories that they told police when they testified at trial.  Accordingly, the prosecutor was permitted to infer why this change in their stories occurred.  Furthermore, Petitioner was found in a hotel room with sophisticated technical equipment, large quantities of

1   drugs as well as firearms.  Thus, the fact that the prosecutor stated that Petitioner was a "big fish"

2   also did not amount to prosecutorial misconduct as it was a reasonable inference from the

3   evidence produced at trial.  Additionally, the jury was instructed that the attorneys' statements

4   were not evidence.  For the foregoing reasons, Petitioner is not entitled to federal habeas relief on

5   this prosecutorial misconduct argument.

6                           x.     Arguing that only men's wear was found in the hotel room

7             Petitioner argues that it was misconduct when the prosecutor asserted during his closing

8   argument that only men's wear was found in the hotel room.  However, this statement was based

9   on the evidence produced at trial.  It was not improper.

10                           xi.     Arguing Petitioner used Moon and Ray-Bailey

11             Next, Petitioner asserts that the prosecutor committed misconduct by arguing that

12   Petitioner used Moon and Ray-Bailey.  Petitioner asserts it was not based on the evidence

13   produced at trial.  Nevertheless, this statement was a reasonable inference and does not amount to

14   misconduct in light of the wide latitude that a prosecutor has to make his closing argument at

15   trial.  The evidence at trial indicated that Ray-Bailey had previously told the police that she got

16   the hotel room for Petitioner.  However, at trial Moon and Ray-Bailey both changed their stories

17   and the prosecutor was permitted to engage in an inference as to why this change occurred.

18             The jury was specifically instructed that the attorneys statements were not evidence and

19   that they had to base their decision on the evidence produced at trial.  Thus, the jury instructions

20   minimized any possible effect that the prosecutor's statement would have had on the jury as the

21   jury is deemed to have followed the court's instructions.  Accordingly, Petitioner failed to show

22   that he is entitled to federal habeas relief on this argument.

23                         xii.     Asking Moon about statements she made to her probation officer

24             Next, Petitioner argues that the prosecutor committed misconduct by asking Moon about

25   the statements she made to her probation officer.  Petitioner asserts that "the prosecutor admitted

26   hearsay evidence into the trial by using Ms. Moon's alleged statements to someone else as

1  evidence." (Pet'r's Pet. at p. 104.)  The prosecutor cross-examined Moon with her purported

2  statements to her probation officer to impeach her statement that she was not afraid of Petitioner.

3  The prosecutor cannot admit hearsay evidence.  The trial court is the arbiter of whether evidence

4  should be admitted or excluded, not the prosecutor.

5      To the extent that the this argument could be construed as arguing that the prosecutor

6  committed misconduct by asking Petitioner about any statements she made to her probation

7  officer, the questioning was not improper.  As previously stated, the prosecutor questioned

8  Petitioner in an attempt to impeach her testimony that she was not afraid of Petitioner which was

9  plainly permissible.  Accordingly, Petitioner is not entitled to federal habeas relief on this

10  argument.

11          xiii.    Using drug addiction to impeach Moon's credibility

12      Petitioner argues that it was misconduct for the prosecutor to assert that Moon was afraid

13  of being a snitch.  Additionally, Petitioner asserts that "there was no evidence that Moon was

14  afraid of being labeled as a snitch, and it is misconduct for the prosecutor to tell the jury that

15  because Ms. Moon is a drug user, they then know that everything the prosecutor is saying is

16  true." (Pet'r'r Pet. at p. 94.)

17      The prosecutor is entitled to reasonable inferences from the evidence.  In this case, Moon

18  had previously gave a statement to the police that she got her drugs from Petitioner.  However,

19  her testimony at trial differed in several respects from her prior statements.  At trial, Moon

20  testified that she was only in the room to return some DVDs.  (See Reporter's Tr. at p. 173.)  She

21  further testified that she got the methamphetamine on her person from someone in Willows but

22  she could not recall his name.  (See id. at p. 174.)  In light this inconsistency, the prosecutor,

23  exercising the wide latitude that is permitted during closing argument, was allowed to infer why

24  her trial testimony differed from prior statements which had implicated Petitioner.

25      Additionally, defense counsel's objection was sustained when the prosecutor stated to the

26  jury that, "[a]nd the reason you know that is true is because she is a drug user, if the word gets

1   out that she rats and testifies against the people she buys drugs from."  (Reporter's Tr. at p. 395.)

2   Thus, this further limited any impact on the fundamental fairness of Petitioner's trial based on the

3   prosecutor's purportedly improper comments.  Accordingly, Petitioner is not entitled to federal

4   habeas relief on this argument.

5                          xiv.    Arguing lack of evidence proved Petitioner is guilty

6            Finally, Petitioner asserts that:

7                    It is misconduct for a prosecutor to tell the jurors that the lack of
                     evidence proves Petitioner is guilty because it's a sophisticated
8                    setup, and it is misconduct for the prosecutor to tell the jurors that
                     because it's a sophisticated operation which fact shows Petitioner
9                    is the guilty party and the jurors thereafter "can't believe defendant
                     Ray-Bailey's testimony from yesterday."
10

11   (Reporter's Tr. at p. 94.)  Petitioner takes exception with the following argument from the

12   prosecutor's rebuttal argument:

13                   I told you in my opening statement that Mr. Thompson is probably
                     going to get up on behalf of Defendant Boswell and say, "Believe
14                   Defendant Ray-Bailey."  That is what he did.  He wants you to
                     believe her statement here.  And as he was talking about that I
15                   thought, too, and he said, you know nobody saw Mr. Boswell on
                     the surveillance, nobody ever saw until they went in the room.  I
16                   want you to think about that in light of the statements from
                     November 16th all pointing fingers at Mr. Boswell.  There is
17                   another fact that shows you he is a big fish.  One, this is a
                     sophisticated setup as drug dealers go, surveillance equipment,
18                   scanners, code, it is fairly sophisticated.  It is the product of a big
                     fish and a big fish is smart enough to know he doesn't want to be
19                   seen by anyone who can point the finger at him.  But somebody has
                     to rent the room.  So what do you do?  He used somebody.  He
20                   used somebody to help set it up so that if everything falls apart and
                     the cops see you, who is left holding the bill, who is the last one at
21                   the table?  That is why you can't believe Ray-Bailey's statement
                     from yesterday because it is too convenient.  It is another sign of
22                   facts showing that Defendant Boswell's using her.  He used her to
                     set up the room, he used her to set up this equipment.  He was there
23                   for two days, the only clothing in the room was male clothing.
                     Even Mr. Osbourne said that the husband was not there, there was
24                   nobody else there when he was there.  But you know there was one
                     male in there and the statements given on November 16th say that
25                   that man is Defendant Boswell, that he was the one there.

26   (Reporter's Tr. at p. 421-22.)  When viewed in its entire context, the above statement by the

61

prosecutor did not amount to prosecutorial misconduct.  Rather, the prosecutor was permitted to

undertake reasonable inferences based on the evidence produced at trial.  Furthermore, the jury

was specifically instructed that it had to find Petitioner guilty beyond a reasonable doubt based

on the evidence produced at trial and that the attorneys statements were not evidence.  The jury is

deemed to have followed this instruction which would have minimized any possible prejudicial

impact, if any, the prosecutor's statement quoted above had on the jury's verdict.  Accordingly,

for the foregoing reasons, Petitioner is not entitled to federal habeas relief on this prosecutorial

misconduct argument.

J.  Claim X

In Claim X, Petitioner raises numerous ineffective assistance of counsel claims.

Specifically, Petitioner argues that trial counsel:  (1) conducted no investigation of Moon or Ray-

Bailey as accomplices; (2) conducted no investigation of Moon's state of mind as she was under

the influence of methamphetamine at the time of her statement to the police; (3) failed to

investigate why no report was ever made of Osbourne being detained and questioned; (4)

conducted no investigation on the issue of using creatine as a cutting agent for drugs; (5)

conducted no investigation on the issue of Ray-Bailey's testimony that she bought the guns at a

flea market and failed to object to the prosecutor's statement that guns are not bought at flea

markets and that Ray-Bailey's testimony on the issue was laughable; (6) failed to object to the

prosecutor's statement to the jury on the concept of reasonable doubt; (7) failed to call the

prosecutor as a witness regarding the statements Moon gave to him along with Agent Beeman at

the suppression hearing; (8) failed to investigate alleged men's wear that Beenman claimed to

find in the hotel room and failed to effectively cross-exmaine Beeman on the issue; (9) failed to

object to the prosecutorial misconduct alleged in Claim IX; (10) failed to cross-examine Beeman

about the tennis shoes that Beeman testified were men's shoes; (11) failed to cross-examine

Beeman about the contents of the two bags that Beeman told the jurors contained men's clothes;

(12) failed to cross-examine Beeman about his statements that Moon was involved in the sales of

1    drugs from the hotel room thereby making her an accomplice; (13) failed to cross-examine

2    Beeman about Moon's state of mind; (14) failed to cross-examine Beeman and Norwood about

3    their misstatements and omissions regarding Osbourne's detention and questioning and why no

4    report was ever made of Moon's exculpatory statement to Beeman at the suppression hearing;

5    (15) failed to cross-examine Beeman about Moon's exculpatory statement to him at the

6    suppression hearing; (16) failed to cross-examine Beeman about going to Moon's house before

7    trial and threatening her concerning her testimony; (17) failed to raise the issue to the jury that

8    Moon and Ray-Bailey were accomplices and therefore their statements would need

9    corroboration; (18) agreed to a modified accomplice jury instruction; (19) failed to object to

10   Beeman's testimony that only men's wear was found in the hotel room; (20) failed to object to

11   introduction of photos as evidence of men's wear found in the hotel room; (21) failed to object to

12   prosecutor bringing up statements Moon made to a probation officer; (22) failed to make a

13   motion for acquittal based on insufficiency of the evidence; (23) failed to view videotape of

14   Osbourne or the photos taken of the room.

15          The Superior Court analyzed Petitioner's ineffective assistance of counsel arguments as

16   follows in deciding Petitioner's state habeas petition:

17              All but one of the allegations are matters of record which could
                have been raised on appeal and, therefore, are procedurally barred.
18              The one allegation that is not is that defense counsel failed to do
                adequate investigations.  However, there is no evidence other than
19              Defendant/Petitioner's mere claim not based upon any allegation of
                personal knowledge that, in fact, defense counsel failed to
20              investigate.  Therefore, relief is not warranted.

21   (Resp't's Lodged Doc. 5 at p. 3.)  Respondent argues that some of Petitioner's arguments within

22   Claim X are procedurally defaulted because they could have been raised on direct appeal.  (See

23   Resp't's Answer at p. 28.).  However, the merits of Petitioner's ineffective assistance of counsel

24   arguments will be analyzed.  See Lambrix, 520 U.S. at 525; Franklin, 290 F.3d at 1232.

25          The standard for determining an ineffective assistance of counsel claim has been

26   previously set forth in supra Part V.A.

1  //

2          i.      Failing to conduct investigation regarding Moon and Ray-Bailey as
                   accomplices

3

4          Petitioner argues that the issue of whether Moon and Ray-Bailey were accomplices was

5   never raised in the state court and this prejudiced Petitioner because he could not be convicted

6   based on the uncorroborated statements of accomplices.  Contrary to Petitioner's assertions, the

7   issue of whether Moon and Ray-Bailey were accomplices was in dispute.  The jury was

8   specifically instructed that it was left to decide whether in fact Moon and Ray-Bailey were

9   accomplices.  At trial, the jury was specifically instructed as follows:

>           Before you may consider the statements or testimony of Carrie
            Moon and Susan Ray-Bailey as evidence against defendant
            Boswell regarding the crimes, you must decide whether Carrie
            Moon and Susan Ray-Bailey were accomplices to those crimes.  A
            person is an accomplice if he or she is subject to prosecution for
            the identical crime charged against the defendant.  Someone is
            subject to prosecution if she or if he or she personally committed
            the crime or if, one, he or she knew of the criminal purpose of the
            person who committed the crime, and two, he or she intended to,
            and did in fact, aid, facilitate, and promote, encourage, or instigate
            the commission of the crime.

            The burden is on Defendant Boswell to prove that it is more likely
            than not that Carrie Moon and Susan Ray-Bailey were an
            accomplice.

            An accomplice does not need to be present when the crime is
            committed.  On the other hand, a person is not an accomplice just
            because he or she is present at the scene of the crime, even if he or
            she knows that the crime will be committed or is being committed
            and does nothing to stop it.

            A person may be an accomplice even if he or he [sic] is not
            actually prosecuted for the crime.

            If you decide that a declarant was not an accomplice, then
            supporting evidence is not required and you should evaluate their
            statements or testimony as you would that of any other witness.

            If you decide that a declarant was an accomplice, then you may not
            convict Defendant Boswell based on their statements alone.  You
            may use the statements or testimony of an accomplice to convict
            the defendant only if, one, the accomplice's statement or testimony

64

1     is supported by other evidence that you believe; and, two, the supporting evidence tends to connect the defendant to the

2     commission of the crimes.

3     Supporting evidence, however, may be slight.  It does not need to be – it does not need to be enough, by itself, to prove that the

4     defendant Boswell is guilty of the charged crimes, and it does not need to support every fact mentioned by the accomplice in the

5     statement or about which the accomplice testified.

6     On the other hand, it is not enough if the supporting evidence merely shows a crime was committed or the circumstances of its

7     commission.  The supporting evidence must tend to connect the Defendant Boswell to the commission of the crime.

8

9     The evidence needed to support the statements or testimony of one accomplice cannot be provided by the statement or testimony of another accomplice.

10

11    Any statement or testimony of an accomplice that tends to incriminate the Defendant Boswell should be viewed with caution.

12    You may not, however, arbitrarily disregard it.  You should give that statement or testimony the weight you think it deserves after

13    examining it with care and caution and in light of all the other evidence.

14    (Reporter's Tr. at p. 434-36.)

15        The jury instructions indicated that there was an issue of fact regarding whether Moon

16    and Ray-Bailey were accomplices.  Moon had previously told the police that she purchased drugs

17    from Petitioner.  However, this does not establish that she was an accomplice.  See Mimms, 110

18    Cal. App. 2d 310, 314, 242 P.2d 331.  Furthermore, Ray-Bailey's trial testimony as compared to

19    her prior statement to the police created a factual issue regarding whether she was an accomplice.

20    Accordingly, the matter was clearly in factual dispute as indicated by the fact that the issue was

21    left up to the jury to decide.  Therefore, Petitioner failed to show that he is entitled to federal

22    habeas relief on this argument as the matter was in dispute at trial.

23          ii.    Conducting no investigation of Moon's state of mind as she was under the influence of methamphetamine at the time of her statement to the police

24

25        Petitioner argues that trial counsel failed to investigate Moon's state of mind because

26    when she told the police that she got the drugs from Petitioner, she was under the influence of

1    crystal methamphetamine.  Petitioner argues that counsel should have called an expert who could

2    have testified to the effects of methamphetamine that Moon was under the influence of while she

3    was being questioned by police.  Petitioner relies on Agent Beeman's testimony that Moon had

4    some symptoms of being under the influence of drugs.  (See Reporter's Tr. at p. 238.)

5         Petitioner fails to show prejudice.  He comes forward with no evidence to indicate what a

6    purported expert would have testified to regarding Moon's purportedly being under the influence

7    of crystal methamphetamine.  As a result, he fails to establish to a reasonable probability that the

8    outcome of the proceeding would have been different had counsel investigated this matter further

9    and called an expert to testify as to the effects of crystal methamphetamine.  Accordingly, this

10   argument does not merit federal habeas relief.

11             iii.    Failing to investigate why no report was ever made of Osbourne being
                       detained and questioned
12

13        Next, Petitioner argues that:

14             Trial counsel was ineffective for not investigating why no report
               was ever made of Osbourne being detained and questioned in this
15             case.  Trial counsel never cross-examined Agent Beeman or
               Norwood about it or asked why if Osbourne was being detained,
16             the surveillance report and statement of probable cause the agents
               used to obtain the search warrant doesn't include any of the
17             information they got from questioning Osboune and make it appear
               that he never left Room 413 when the agents knew that Osbourne
18             was not even in the room anymore.

19   (Pet'r's Pet. at p. 111.)  Petitioner fails to show that he was prejudiced.  He does not show how,

20   to a reasonable probability a report would have changed the outcome of the trial.  Both Agent

21   Beeman and Norwood testified at trial regarding their interview of Osbourne.  Petitioner does not

22   show how the report would have changed the outcome of the trial to a reasonable probability.

23   Beeman and Norwood testified at trial and Petitioner was entitled to cross-examine them.  Thus,

24   this argument does not merit federal habeas relief.

25             iv.    Conducing no investigation on the issue of using creatine as a cutting
                      agent for drugs
26

1    Next, Petitioner argues that trial counsel was ineffective for failing to conduct any

2 investigation on using creatine as a cutting agent for drugs.  Petitioner asserts that had trial

3 counsel asked the expert at trial, she would have testified that there was no creatine found the

4 drugs.  (See Pet'r's Pet. at p. 112.)  Petitioner fails to come forward with evidence that the expert

5 would have so responded at trial.  Furthermore, Petitioner fails to show that even if this question

6 had been presented to the expert, that it would have to a reasonable probability changed the

7 outcome of the trial.  While the prosecutor alluded to the presence of cutting agents found in the

8 hotel room, the evidence also included large quantities of drugs and some firearms in the hotel

9 room where Petitioner was found.  The evidence at trial clearly implicated Petitioner in the

10 crimes.  Petitioner fails to show that he was prejudiced with respect to counsel's failure to

11 investigate this matter and question the expert accordingly.  Thus, this argument does not merit

12 federal habeas relief.

13          v.    Conducting no investigation on the issue of Ray-Bailey's testimony that
                  she bought the guns at a flea market
14

15    Petitioner asserts that trial counsel was ineffective for failing to investigate the issue of

16 Ray-Bailey's testimony that she bought the guns at a flea market.  He argues that an expert

17 should have been called as a witness to testify that guns can be bought at flea markets.  Petitioner

18 also argues that counsel was ineffective for failing to object to the prosecutor's statement that

19 Ray-Bailey's testimony was laughable on this point.  (See Pet'r's Pet. at p. 113.)

20    Petitioner fails to show that he is entitled to federal habeas relief on this argument.  He

21 comes forward with no evidence from an expert which states that guns can in fact be bought at

22 flea markets.  Thus, he fails to show to a reasonable probability that the outcome of the

23 proceeding would have been different had counsel investigated this matter further.

24    Furthermore, as to trial counsel's failure to object to the prosecutor's argument that this

25 story was laughable, Petitioner also is not entitled to federal habeas relief.  As described supra,

26 the prosecutor is entitled wide latitude at trial and is allowed to strike hard blows against the

defense.  See Ceja, 97 F.3d at 1253-54.  As previously stated the prosecutor was entitled

reasonable inferences in his argument regarding Ray-Bailey's switch in stories from the one she

previously gave the police to her trial testimony.  Additionally, the jury was specifically

instructed that the prosecutor's statements are not evidence and the jury is deemed to have

followed these instructions.  Accordingly, Petitioner failed to show to a reasonable probability

that the outcome of the proceeding would have been different had trial counsel objected to the

prosecutor's statements.

           vi.     Failing to object to the prosecutor's statement to the jury on the concept of
reasonable doubt

Next, Petitioner argues that counsel should have objected to the prosecutor's statement

during closing argument on the standard of reasonable doubt.  As described supra, the

prosecutor's statement on the reasonable doubt standard was not improper, therefore, counsel

was not ineffective for failing to object to the prosecutor's statement of the standard during

closing argument.

Petitioner also failed to show that he was prejudiced by counsel's failure to object.  As

previously discussed, the jury was specifically instructed by the trial judge on the issue of what

constitutes reasonable doubt.  The jury was also specifically instructed that its instructions were

the ones to follow and that the attorneys' statements were not evidence.  The jury is deemed to

have followed these instructions.  Accordingly, Petitioner is not entitled to federal habeas relief

on this argument.

           vii.    Failing to call the prosecutor as a witness regarding the statements Moon
gave to him along with Agent Beeman at the suppression hearing

Petitioner asserts that his trial counsel should have called the prosecutor as a witness who

would have testified that Moon gave him a statement at the suppression hearing in which she told

him that she never bought drugs from Petitioner.  As noted by Respondent, Petitioner's trial

counsel did question Moon about the statements she made to the prosecutor at the suppression

1   hearing.  Moon testified she told the prosecutor at the suppression hearing that she never bought

2   methamphetamine from Petitioner.  (See Reporter's Tr. at p. 177.)  Thus, evidence was already in

3   the record that Moon had recanted her prior statements to the police to the prosecutor.

4   Attempting to call the prosecutor as a witness would have been cumulative on this point.

5   Accordingly, Petitioner failed to show to a reasonable probability that the outcome of the

6   proceeding would have been different as the jury was already aware that Moon had recanted her

7   prior statements to the prosecutor.  Therefore, this argument does not merit federal habeas relief.

8              viii.   Failing to investigate alleged men's wear that Beenman claimed to find in
                       the hotel room and failing to effectively cross-exmaine Beeman on the
9                      issue

10       Petitioner also argues that trial counsel was ineffective for failing to investigate "what the

11  alleged men's wear was that Agent Beeman claimed to have found in the room, or to effectively

12  cross-examine the agent about how he determined that it was men's wear." (Pet'r's Pet. at p.

13  117.)  Petitioner failed to show to a reasonable probability that the outcome of the trial would

14  have been different had counsel investigated this issue further.  He fails to show what further

15  investigation or questioning of Agent Beeman would have revealed on this topic.  He does not

16  show that there was anything but men's wear in the hotel room.  Accordingly, he fails to satisfy

17  the requisite Strickland prejudice standard.

18              ix.    Failing to object to the prosecutorial misconduct alleged in Claim IX

19       Petitioner argues that counsel should have objected to the prosecutorial misconduct

20  committed by the prosecutor as asserted in Claim IX.  As noted supra Part V.I, Petitioner failed

21  to show that the prosecutor committed misconduct on several of his purported prosecutorial

22  misconduct issues.  Thus, counsel would not be deemed ineffective for objecting to comments by

23  the prosecutor that were not improper.  Additionally, to the extent that any of the prosecutor's

24  actions/comments were improper, Petitioner failed to show that his due process rights were

25  violated.  Furthermore, the jury was specifically instructed that the attorneys' comments were not

26  evidence and the evidence against Petitioner implicated him in the crimes as described surpa.

Accordingly, even assuming *arguendo* that trial counsel should have objected at times to some of the prosecutor's comments, Petitioner failed to show to a reasonable probability that the outcome of the proceeding would have been different had counsel objected.  Thus, this argument does not merit federal habeas relief.

> x.    Failing to cross-examine Beeman about the tennis shoes that Beeman testified were men's shoes

Petitioner argues that his trial counsel was ineffective for failing to cross-examine Agent Beeman about the tennis shoes found in the hotel room that Agent Beeman testified were men's shoes.  (See Pet'r's Pet. at p. 119.)  Petitioner argues that the failure to cross-examine Beeman on this issue was prejudicial because the men's clothing items were used to link Petitioner to Room 413.  Petitioner has failed to show to a reasonable probability that the outcome of the proceeding would have been different had trial counsel cross-examined Beeman on this issue.  Petitioner comes forward with no evidence that the tennis shoes were in fact women's shoes nor does he illustrate that the numerous other items found in the room were not in fact men's wear. Accordingly, Petitioner is not entitled to federal habeas relief on this argument.

> xi.    Failing to cross-examine Beeman about the contents of the two bags that Beeman told the jurors contained men's clothes

Next, Petitioner argues that his trial counsel was ineffective for failing to cross-examine Agent Beeman on the contents of the two duffle bags that Beeman did not personally search. Beeman testified that the police searched each of three duffle bags and he searched one of them personally.  He testified that each bag contained various men's clothing.  (See Reporter's Tr. at p. 315.)  Petitioner has failed to show to a reasonable probability that the outcome of the proceeding would have been different had trial counsel pursued this line of cross-examination.  He has come forward with no evidence to suggest that anything other than men's wear was found in the duffle bags.  Accordingly, he failed to show that he was prejudiced by counsel's failure to further cross-examine Beeman on the contents of the duffle bags.  Therefore, this argument does not merit

1  federal habeas relief.

2          xii.    Failing to cross-examine Beeman about his statements that Moon was
                   involved in the sales of drugs from the hotel room thereby making her an
3                  accomplice

4          Petitioner argues that trial counsel was ineffective for failing to cross-examine Agent

5  Beeman on the fact that Moon was involved in the sale of drugs from the hotel room with

6  Petitioner thereby making her an accomplice.  In support of Petitioner's argument, he cites to

7  Agent Beeman's police report which stated the following:

8                  Moon indicated she had just arrived at the room a short time before
                   we arrived to serve the search warrant.  She was there to visit
9                  Boswell whom she had met a few weeks before.  Moon initially
                   said she was only there to return some videos to Boswell.  After
10                 further discussion, Moon admitted she had obtained some
                   methamphetamine from Boswell and admitted this was the
11                 methamphetamine agents found inside her purse.  Moon denied
                   giving Boswell any money for the methamphetamine but indicated
12                 the agreement was for her to compensate Boswell in some way for
                   the drugs.  Moon denied any knowledge of the firearms found in
13                 the room.

14 (Pet's Pet. Ex. H, at p. 4.)  Contrary to Petitioner's assertion, the police report he relies on for this

15 argument does not indicate that Moon ever admitted that she was a seller of methamphetamine

16 like Boswell.  Instead, it only indicated that Moon was a purchaser of methamphetamine from

17 Boswell.  While the police report does indicate that Beeman believed Moon was involved in the

18 sales of drugs from the hotel room, the fact that Beeman may not have been pressed on this issue

19 during the cross-examination does not merit federal habeas relief.  Besides this statement in the

20 police report, Moon never stated to the police that she was anything but a purchaser of drugs.

21 The issue of whether Moon was an accomplice was clearly a factual issue left up to the jury to

22 decide.  Furthermore, even if Moon was an accomplice, there was sufficient corroborating

23 evidence to convict Petitioner besides her testimony.  As previously indicated, corroborating

24 evidence need only be "slight."  See Williams, 49 Cal. 4th at 456, 111 Cal. Rptr. 3d 589, 233

25 P.3d 1000.  Accordingly, Petitioner failed to show to a reasonable probability that the outcome of

26 the proceeding would have been different had counsel cross-examined Beeman on his belief as

1  stated in the police report that Moon was involved in the sales of drugs from the hotel room.

2          xiii.    Failing to cross-examine Beeman about Moon's state of mind

3          Petitioner also asserts that trial counsel was ineffective because he failed to cross-

4  examine Beeman about Moon's state of mind when she implicated Petitioner.  Petitioner notes

5  that Beeman testified that Moon appeared to be under the influence of drugs when she was

6  questioned in the hotel room.  Petitioner is not entitled to federal habeas relief on this argument.

7  He fails to show that counsel's performance fell below an objective standard of reasonableness

8  with respect to the cross-examination as there was no evidence that Beeman was qualified to

9  testify as an expert regarding Moon's state of mind.  Additionally, with respect to counsel's

10  cross-examination of Beeman, the jury was made aware that Moon appeared to be under the

11  influence.  For these reasons, Petitioner is not entitled to federal habeas relief on this argument.

12          xiv.    Failing to cross-examine Beeman and Norwood about their misstatements
                   and omissions regarding Osbourne's detention and questioning and why
13                 no report was ever made of Moon's exculpatory statement to Beeman at
                   the suppression hearing

14

15          Petitioner asserts the following in this argument:

16          Petitioner's counsel was ineffective for failing to cross-examine
            Agent Beeman or Agent Norwood about any of their misstatements
17          of facts, omissions and failure to file any reports about Osbourne's
            detention and questioning by them in this case, and why no report
18          was ever made of Moon's exculpatory statement to Agent Beeman
            at the illegal search and seizure hearing.  The jurors should have
19          known that the agents in this case had a pattern of hiding evidence
            and reports and misstating facts in this case and had counsel
20          effectively represented Petitioner and cross-examined the agents
            effectively and raised these issues the jurors might have had
21          reasonable doubt about the agents testimony that Moon ever said
            she obtained the drugs from Petitioner, a claim that Moon testified
22          under oath she never said, and the jurors might have then believed
            Moon's testimony that she never said to the agents that she got any
23          drugs from Petitioner.

24  (Pet'r's Pet. at p. 122-23.)  To the extent that Petitioner argues that his trial counsel should have

25  cross-examined Beeman and Norwood because they hid evidence and reports, Petitioner's

26  allegations are conclusory and do not merit granting federal habeas relief.  See James, 24 F.3d at

72

26. Thus, he has failed to show to a reasonable probability that the outcome of the proceeding would have been different had trial counsel engaged in this inquiry with these two witnesses.

Petitioner does argue that Beeman and Norwood should have been cross-examined on the statements Moon made at the suppression hearing. Petitioner fails to show prejudice however as the jury heard testimony directly from Moon. She testified that she told the district attorney at the suppression hearing that she did not get the methamphetamine from Petitioner. (See Reporter's Tr. at p. 177.) Thus, the jury was aware through her testimony that she told the prosecutor that she did not receive the drugs from Petitioner. Accordingly, Petitioner failed to show to a reasonable probability that the outcome of the proceeding would have been different if the agents were cross-examined on this issue as well as the evidence would have been purportedly cumulative.

          xv.     Failing to cross-examine Beeman about Moon's exculpatory statement to him at the suppression hearing

Similar to the previous argument, Petitioner asserts that trial counsel was ineffective by failing to question Agent Beeman about Moon's exculpatory statements to him at the suppression hearing. (See Pet'r's Pet. at p. 123-24.) As previously noted, Moon testified at trial that she told the prosecutor at the suppression hearing that she never received the drugs in her possession from Petitioner. This evidence was produced at trial for the jury to consider. Petitioner asserts however that counsel was ineffective in failing to question Beeman on the issue because it would have shown that Moon had been telling the prosecutor for months that she never obtained the drugs from Petitioner. Nevertheless, the jury heard this testimony directly from Moon. Cross-examining Beeman on the issue would have been cumulative of Moon's testimony. Accordingly, Petitioner has failed to show to a reasonable probability that the outcome of the proceedings would have been different had counsel engaged in this line of cross-examination.

//

//

73

1              xvi.     Failing to cross-examine Beeman about going to Moon's house before trial
and threatening her concerning her testimony

2

3       In his next argument, Petitioner asserts the following:

4              Trial counsel was ineffective for failing to cross-examine agent
Beeman about him going to Moon's house just before trial and his

5              threats to her concerning her testimony after she had told him that
she didn't get any drugs from Petitioner at the motion hearing

6              months before trial.

7  (Pet'r's Pet. at p. 124-25.)  During the trial, the following colloquy took place between

8  Petitioner's trial counsel and Moon on cross-examination:

9              Q:  Now, prior to testifying today and since you talked to D.A.
Colby, have you been contacted by law enforcement again?

10             A:  Yes.
Q:  And when was that?

11             A:  Yesterday.
Q:  And was some kind of ultimatum given to you at that time?

12             A:  They came to my house and –
Q:  Can you tell us who "they" --

13             A:  The officer sitting there and I am not sure of the other one's
name, but I could probably tell you, and they wanted to ask me if I

14             would go meet with the D.A., and at that time I was – I told them
at that specific time I was supposed to be at my drug class and I

15             told them that that is what I needed to go do, and my son was in
day care and I couldn't do it at that time.  Well, they pretty much

16             wouldn't leave until I said, you know, I can take my kid to my
mom's house when she gets off work and meet with them, but they

17             told me that if I – they threatened to do a probation search and all
kinds of stuff if I didn't, you know, say that I would go meet with

18             them.
Q:  Were you directed to anything with respect to the content of

19             your testimony?  Did they tell you needed to testify in some way?
A:  They just told me that they wanted me to come here and, you

20             know, tell the truth or whatnot, and I told them that I never agreed
to do anything like that, and that basically, I mean my part of it is

21             over, I have already been sentenced and whatnot.  I don't
understand why I got subpoenaed by them.  They never even talked

22             to me in jail, never questioned me, nothing, until I just got a
subpoena in the mail.

23             Q:  Now, you said that they told you they wanted you to come here
and testify and tell the truth?

24             A:  Yes.
Q:  Is that what you just did?

25             A:  Yes.

26  (Reporter's Tr. at p. 177-79.)  Petitioner fails to show that counsel's failure to cross-examine

Beeman on his conversation with Moon prior to trial fell below an objective standard of reasonableness.  As Moon testified at trial, law enforcement told her she had to tell the truth at the trial at this meeting and she testified that she did tell the truth at trial.  Accordingly, counsel was not ineffective for failing to cross-examine an agent who purportedly told Moon she had to tell the truth at trial, particularly after that witness testified that she was telling the truth.

> xvii.    Failing to raise the issue to the jury that Moon and Ray-Bailey were accomplices and therefore their statements would need corroboration

Next, Petitioner asserts that:

> Trial counsel was ineffective for failing to raise the issue and argue to the jurors that Moon and Ray-Bailey were accomplices and therefor [sic] their alleged statements would need corroboration to support a conviction by law against Petitioner.  Counsel never raised one word about Moon and Ray-Bailey being accomplices. This was extremely prejudicial to Petitioner's case cause Petitioner could not have been convicted based on uncorroborated statements of an accomplice.

(Pet'r's Pet. at p. 125)  As previously explained, the jury was instructed on the issue of accomplice testimony requiring corroboration.  It was a factual question left up to the jury to decide.  This was entirely proper as the evidence at trial produced differing accounts of Moon and Ray-Bailey's involvement with the situation arising from Room 413.  Furthermore, as cited previously, there was corroboration which implicated Petitioner aside from Moon and Ray-Bailey's testimony (assuming the jury ultimately considered them accomplices).  Accordingly, Petitioner failed to show that he was prejudiced by counsel's failure to purportedly press this issue further in his closing argument.

> xviii.   Agreeing to a modified accomplice jury instruction

In his next ineffective assistance of counsel argument, Petitioner asserts that:

> Trial counsel was ineffective for agreeing in some back-room deal, without notifying Petitioner, to some modified accomplice jury instruction.  It is obvious based on the arrest report, trial record and the case law that both Moon and Ray-Bailey were accomplices whose statements would need corroboration.  And the court had a

1    duty to instruct the jurors of the accomplice corroboration rule, and
     counsel should have never agreed to any modified instruction about
2    it.  And it was extremely prejudicial to Petitioner cause a
     conviction can not be had on the uncorroborated statements of an
3    accomplice.

4    (Pet'r's Pet. at p. 125-26.)  The trial court did instruct the jury on the need for corroboration from

5    accomplice testimony.  Petitioner fails to explain what was incorrect with this jury instruction.

6    Thus, he fails to show that he is entitled to federal habeas relief on this argument.

7            xix.    Failing to object to Beeman's testimony that only men's wear was found in
                     the hotel room
8

9            Petitioner also argues that trial counsel was ineffective for failing to object to Agent

10   Beeman's testimony that only men's wear was found in the hotel room.  (See Pet'r's Pet. at p.

11   126-28.)  Petitioner has failed to show prejudice.  He has come forward with no evidence to

12   indicate that anything other than men's wear was found in the hotel room.  Accordingly, he fails

13   to show to a reasonable probability that the outcome of the proceeding would have been different

14   had counsel questioned Agent Beeman further on his testimony that only men's wear was found

15   in the hotel room.

16           xx.     Failing to object to introduction of photos as evidence of men's wear
                     found in the hotel room
17

18           Next, Petitioner asserts that:

19           Trial counsel was ineffective for not objecting to the introduction
             of the photo as evidence of men's wear.  It is unknown whose wear
20           it was as it was all left behind to be destroyed as evidence before
             the defense could examine any of it and trial counsel should have
21           objected to it being used as evidence.

22   (Pet'r's Pet. at p. 128-29.)  Petitioner fails to show that he was prejudiced by counsel's decision

23   not to object to the admission of this evidence.  There was significant evidence which implicated

24   Petitioner in the crimes, which included him being found in the hotel room which contained

25   significant quantities of drugs as well as firearms.  Furthermore, aside from the photographs there

26   was the testimony of law enforcement that men's wear was found in the hotel room even if the

                                                    76

photos were objected to and not admitted as evidence.  Accordingly, Petitioner failed to show to a reasonable probability that the outcome of the proceeding would have been different had counsel objected to this evidence.

        xxi.   Failing to object to the prosecutor attempting to impeach Moon with statements she made to a probation officer

Petitioner asserts that trial counsel was ineffective for failing to object to the prosecutor bringing up purported statements that Moon made to her probation officer.  (See Pet'r's Pet. at p. 120-30.)  Petitioner argues that these statements were prejudicial towards him because the prosecutor used these statements to infer to the jurors that Moon had been threatened in some way.  Petitioner asserts that it was Moon's:

> alleged statement made during her arrest, that she denies ever making, that Petitioner was convicted based on [sic], and by the prosecutor using these statements to probation to discredit Moon's testimony and insinuate that she had been threatened the jurors did not believe her testimony at trial and convicted Petitioner based on the alleged statement she denies ever making as she was being arrested while high on drugs.

(Id. at p. 130.)  As stated previously, Moon told her probation officer that she did not want to testify and that certain "precautions" needed to be made for her to testify.  Accordingly, it was not improper for the prosecutor to question Moon on whether she was afraid of Petitioner in light of her testimony that she was not afraid.  As the prosecutor's questions did not constitute misconduct, Petitioner's trial counsel was not ineffective for failing to object to this line of questioning at trial.  Thus, Petitioner is not entitled to federal habeas relief on this argument.

        xxii.   Failing to make a motion for acquittal based on insufficiency of the evidence

Next, Petitioner argues that counsel was ineffective for failing to make a motion for acquittal at the end of the trial based on insufficiency of the evidence.  The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for with which he is charged."

1   In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction, if

2   "after viewing the evidence in the light most favorable to the prosecution, any rational trier of

3   fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v.

4   Virginia, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under Jackson is 'whether the

5   record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  Chein

6   v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).  A petitioner

7   for writ of habeas corpus "faces a heavy burden when challenging the sufficiency of the evidence

8   used to obtain a state conviction on federal due process grounds."  Juan H. v. Allen, 408 F.3d

9   1262, 1274 (9th Cir. 2005).

10        In this case, when viewed in the light most favorable to the prosecution, there was

11   sufficient evidence to convict Petitioner for the reasons previously discussed.  To reiterate,

12   Petitioner was found in a hotel room where significant quantities of drugs were found along with

13   firearms.  Petitioner was the only man in the room and only men's wear was found in the room.

14   Moon told police that she got her methamphetamine from Petitioner.   Ray-Bailey told police that

15   she rented the hotel room for Petitioner.  Sophisticated electronic equipment like police scanners

16   were found in the hotel room.  Petitioner fails to show that he was prejudiced by counsel's failure

17   to make a motion for acquittal at the close of trial.

18              xxiii.   Failing to view videotape of Osbourne or photos taken of the room

19        Finally, Petitioner asserts that counsel was ineffective for failing to view the videotape of

20   Osbourne as well as failing to view photos taken of the hotel room.  (See Pet'r's Pet. at p. 131-

21   32.)  Petitioner fails to show how the videotape or the photos would have helped his case.

22   Accordingly, he fails to establish to a reasonable probability that the outcome of the proceeding

23   would have changed the outcome of the proceedings.  Thus, this argument does not merit federal

24   habeas relief.

25        K.  Claim XI

26        In Claim XI, Petitioner raises several ineffective assistance of appellate counsel claims.

78

The last state court decision on Petitioner's ineffective assistance of appellate counsel arguments was from the Tehama County Superior Court which stated the following:

> Defendant/Petitioner alleges ineffective assistance of appellate counsel.  The recurring problem of allegations of this nature is that the trial court, specifically this Court, does not have a complete record of appellate court proceedings.  In other words, this Court does not know what arguments were made, or positions taken by appellate counsel.  Mere allegations in the petition of what appellate counsel did, or did not do are simply not sufficient to warrant granting relief by way of a writ or order to show cause in this court.

(Resp't's Lodged Doc. at p. 3-4.)

Among the issues that Petitioner raises within this Claim is that appellate counsel was ineffective for failing to raise the following grounds on direct appeal: (1) trial counsel was ineffective; (2) there was no probable cause for the search warrant based on the arguments stated in Claims I (ineffective assistance of counsel leading up to and during the suppression hearing) and X (ineffective assistance of counsel at trial) of this findings and recommendations; (3) the men's wear allegation was false evidence; (4) exculpatory evidence was destroyed; (5) not raising the Brady claim; (6) not raising the reciprocal discovery claim; (7) not raising the claim that the suppression hearing judge was biased; and (8) failing to raise all of the prosecutorial misconduct arguments set forth in Claim IX.  The Strickland standard previously stated applies to claims of ineffective assistance of appellate counsel as well.  See Smith v. Murray, 477 U.S. 527, 535-36 (1986).  These eight arguments all relate to the failure of appellate counsel to raise issues that for the reasons discussed supra do not merit federal habeas relief.  Accordingly, Petitioner has failed to show that he was prejudiced by appellate counsel's failure to raise these issues on direct appeal.  Nevertheless, Petitioner also raises some additional ineffective assistance of appellate counsel claims that require further analysis.

i.      Failing to raise Confrontation Clause claim

Petitioner argues that appellate counsel was ineffective for failing to argue that his

1  Confrontation Clause rights were violated at trial.  Petitioner asserts that the statement Moon

2  made to police upon her arrest that she received the drugs found in her possession violated his

3  Confrontation Clause rights because he was not allowed to cross-examine her at that time.

4        The Confrontation Clause of the Sixth Amendment provides:  "In all criminal

5  prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

6  him."  U.S. CONST. amend. VI.  "The central concern of the Confrontation Clause is to ensure the

7  reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the

8  context of an adversary proceeding before the trier of fact."  Maryland v. Craig, 497 U.S. 836,

9  845 (1990). The Supreme Court has interpreted the Clause to "guarantee[] the defendant a face-

10  to-face meeting with witnesses appearing before the trier of fact."  Coy v. Iowa, 487 U.S. 1012,

11  1016 (1988) (citations omitted); see also California v. Green, 399 U.S. 149, 174 (1970)

12  (discussing the history, from Rome to England, of the right to confrontation); Pennsylvania v.

13  Ritchie, 480 U.S. 39 (1987) (per curiam) ("[t]he Confrontation Clause provides two types of

14  protections for a criminal defendant: the right physically to face those who testify against him,

15  and the right to conduct cross-examination."); Kirby v. United States, 174 U.S. 47, 55 (1899)

16  ("[A] fact which can be primarily established only by witnesses cannot be proved against an

17  accused . . . except by witnesses who confront him at the trial, upon whom he can look while

18  being tried, whom he is entitled to cross-examine, and whose testimony he may impeach in every

19  mode authorized by the established rules governing the trial or conduct of criminal cases.").

20        In this case, Petitioner has failed to show that he is entitled to federal habeas relief on this

21  argument as he failed to show to a reasonable probability that the outcome of the appeal would

22  have been different had appellate counsel raised this issue.  Petitioner was allowed to cross-

23  examine Moon at trial.  At trial, Moon even testified that she did not tell the police that she

24  received the drugs from Petitioner.  (See Reporter's Tr. at p. 177 ("I told him that the officer

25  asked me if I bought methamphetamine from Mr. Boswell and I said no, and he asked me if he

26  gave it to me and I said no[.]").)  "[T]he confrontation clause does not prohibit the admission into

1   evidence of testimonial hearsay statements against a defendant if the declarant appears for cross-

2   examination at trial."  See People v. Cowan, 50 Cal. 4th 401, 503, 113 Cal. Rptr. 3d 850, 236

3   P.3d 1074 (2010) (citing Crawford v. Washington, 541 U.S. 36, 59 n. 9 (2004)).  In Crawford,

4   the Supreme Court explained that "when the declarant appears for cross-examination at trial, the

5   Confrontation Clause places no constraints at all on the use of his prior testimonial statements."

6   Id.  Accordingly, as Moon was present at trial and Petitioner was allowed to cross-examine her,

7   there was no Confrontation Clause violation.  Therefore, appellate counsel's failure to raise this

8   issue did not prejudice Petitioner as had the issue been raised, it would have been rejected.

9                   ii.      Failing to raise insufficiency of the evidence arguments

10          Petitioner also argues that appellate counsel was ineffective in failing to raise

11   insufficiency of the evidence arguments on appeal.  Petitioner asserts that there was insufficient

12   evidence to convict him of selling methamphetamine, being personally armed with a firearm,

13   possessing methamphetamine and maintaining a place for sale of methamphetamine.

14          The standard for establishing an insufficiency of the evidence claim was described in

15   supra Part V.J.xvii.  Similar reasons as described in supra Part V.J.xvii dicate why this

16   ineffective assistance of appellate counsel claim does not merit federal habeas relief.  Viewed in

17   the light most favorable to the prosecution, an insufficiency evidence claim would have been

18   unsuccessful.  Therefore, this argument should be denied.

19          L.  Claim XII

20          In Claim XII, Petitioner argues as follows:

21          The upper terms imposed by the Court are unconstitutional under
            Cunningham v. California . . . in violation of Petitioner's 5th, 6th
22          and 14th Amendments to the U.S. Constitution.  Specifically, the
            court imposed upper terms for counts 1, 2, 3, 4, and 5, as well as
23          for the firearm enhancement for count 2.  Because the aggravating
            facts relied upon by the court were not tried by a jury, and were not
24          subjected to the constitutionally mandated burden of proof beyond
            a reasonable doubt, the upper terms imposed by the court violate
25          the 5th, 6th and 14th Amendments.

26   (Pet'r's Pet. at p. 163-64.)  The last reasoned decision on this Claim was from the California

                                                 81

1   Court of Appeal on direct appeal which stated the following:

2          In defendant's presence, the trial court on May 5, 2006, imposed
       sentence, stating as follows:
3
       "The Court has considered the circumstances in aggravation and
4      compared those to the circumstances in mitigation, there being
       none.  The Court finds clearly that the facts in aggravation
5      outweigh those in mitigation as set forth on Page 10 [of the
       probation report].  Defendant was in, in [California Rule of Court,
6      rule 4.421] (a-2) the defendant was in possession of two guns at the
       time of the commission of the crime, which is the basis of the
7      special allegation, as already stated by the Court.  The defendant
       showed criminal professionalism and sophistication, those facts
8      have already been recited under that Paragraph (a-8).  (B-2), the
       defendant's prior convictions are numerous.  The defendant has
9      served six prior prison terms.  The defendant was on parole when
       the crime was committed.  And, the defendant's prior performance
10     on probation and parole were unsatisfactory.

11     "Now, I am going to select Count 2 [sale of methamphetamine] as
       the principal term, and because I found the facts in aggravation
12     outweigh those in mitigation, I will impose a four-year upper term
       for that count.
13
       "As to the two prior narcotics convictions, Mr. Wilson [the
14     prosecutor], I appreciate your argument [that two enhancements
       should be imposed though the two convictions occurred in the
15     same case].  I could not find anything on point, but if you follow
       the logic set forth in [section] 667.5, which does not allow an
16     additional year for a commitment, two commitments on two
       separate crimes, I am going to err on the side of caution.  [¶]  I am
17     going to impose a three-year term for the first prior.  I am going to
       impose a three-year term for the second prior, I am going to make
18     that one concurrent.

19     "As to the armed allegation under Count 2, for the facts stated, I
       don't agree with [defense counsel] that the mid term is appropriate
20     in this matter, on the armed allegation.  So I, therefore, will impose
       the upper term of five years for the reasons stated as to the
21     aggravating factors.

22     "As to Count 1, again, consistent with my sentencing in Ray-
       Bailey, I find that the [sic] all of the charge are, occurred in the
23     same location, basically the same thought process was, applies to
       all of the crimes charged and, as I already stated, I don't find them
24     independently or predominantly independent.

25     "So as to Count 1, I impose the term of eight months.  Count 3, 8
       months.  Count 4, eight months plus four months.  Count 5, one
26     year.  All of these terms will run concurrent to Count 2.  By my

count, then [defense counsel], taking the upper term of four years doubling it to 8, 5 years for the prior armed, 3 years for the one prior dope conviction, and then 6 years for the six prior prison commitments.  All of those will clearly run consecutive to each other.  That, by my count is a total of 22 years."

Four days later, on May 9, 2006, the trial court (without further hearing) issued a "MINUTE ORDER" stating:

"In reviewing the record, the Court discovered that the concurrent sentences for Counts I, III, IV and V were imposed incorrectly.  The Court imposed one third the middle term, when the Court should have imposed the full term.  In addition, the Court imposed one third the middle term for an enhancement [§ 12022(a)(1)] under Count IV.  There was no such enhancement for Count IV."  The minute order accordingly modified the judgment to strike the gun enhancement on Count IV and to state that on Counts I, III, IV and V, "Defendant shall be sentenced to the upper term of [three years for Counts I, III, and IV, and four years for Count V]."  The minute order concluded:  "If either side has an objection to this modification of the judgment, they may calendar the matter within 35 days of the date of this Minute Order."

Defendant did not object . . . .

Defendant filed a supplemental brief arguing that his constitutional rights were violated by his being sentenced without a jury trial on aggravating factors used to impose the upper terms.  Even assuming the matter is not forfeited for failure to raise it in the trial court (as urged by the People), we reject defendant's argument.  Applying the Sixth Amendment to the United States Constitution, the United States Supreme Court held in Apprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed.2d 435] that *other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond a statutory maximum must be tried to a jury and proved beyond a reasonable doubt.  (Id. at p. 490 [147 L.Ed.2d at p. 455].)  For this purpose, the statutory maximum is the maximum sentence that a court could impose based solely on the facts reflected by a jury's verdict or admitted by the defendant; thus, when a sentencing court's authority to impose an enhanced sentence depends upon additional fact findings, there is a right to a jury trial and proof beyond a reasonable doubt on the additional facts.  (Blakely v. Washington (2004) 542 U.S. 296, 302-304 [159 L.Ed.2d 403, 413-414].)

Accordingly in Cunningham, supra, – U.S. – [166 L.Ed.2d 856], the United States Supreme Court held that, by assigning to the trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated upper term sentence, California's determinative sentencing law violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments.  (Id. at

1      p. – [166 L.Ed.2d at pp. 870-871].).

2      <u>Cunningham</u> did not alter the rule that the trial court may increase
       a penalty for a crime based upon a defendant's prior convictions
3      without having this aggravating factor submitted to the jury.
       (<u>People v. Black</u> (2007) – Cal.4th –, –, fn. 8 [30].)
4      Here, there were no mitigating factors.

5      As to aggravating factors, one of the aggravating factors cited by
       the trial court – defendant's possession of a gun at the time of the
6      commission of the crime (rule 4.431(a)(2)) – *was* found true by the
       jury, but that was in connection with the special allegation that
7      defendant was personally armed with a firearm (§ 12022, subd. (a))
       in the sale of methamphetamine and possession for sale of
8      methamphetamine.  Since that finding was used for an
       enhancement, as noted by the trial court, we will not consider it for
9      upper term sentencing.  (Rule 4.420(c). [FN 10])

10             [FN 10]  Rule 4.420(c) provides:  "To comply with
               section 1170(b) [court may not impose upper term
11             by using the fact of any enhancement upon which
               sentence is imposed], a fact charged and found as an
12             enhancement may be used as a reason for imposing
               the upper term only if the court has discretion to
13             strike the punishment for the enhancement and does
               so.  The use of a fact or an enhancement to impose
14             the upper term of imprisonment is an adequate
               reason for striking the additional term of
15             imprisonment, regardless of the effect on the total
               term."
16
17     Another aggravating factor cited by the trial court was that
       defendant had numerous prior convictions (rule 4.421(b) [FN 11]),
18     as reflected in the probation report.  Indeed, the probation report
       showed 27 prior convictions in 25 criminal cases for offenses
19     committed over the course of 22 years, between August 1983
       (when defendant was 18) and January 2005.  These prior
20     convictions consisted of 14 parole violations and 13 others
       encompassing seven felonies (including drug offenses, gun
21     offenses, and burglary) and several misdemeanors (including
       assault and batter).  Even discounting the three prior convictions
22     which were used for prior conviction enhancement/strike purposes
       and therefore cannot be used for upper-term sentencing (rule
23     4.420(c)), that leaves 24 prior convictions, which by anyone's
       count is "numerous."  It is not necessary to discount the additional
       four prior convictions underlying the six prior prison term
24     enhancements <u>People v. Hurley</u> (1983) 144 Cal.App.3d 706,
       7099), but even if we were to deduct them, that would still leave 20
25     prior convictions, which is still numerous.

26             [FN 11]  Rule 4.421(b) states that aggravating

                                    84

1

2

3

> circumstances include the fact that "[t]he
> defendant's prior convictions as an adult or
> sustained petitions in juvenile delinquency
> proceedings are numerous . . . ."

4

5

6

7

> As indicated, a jury trial was not required for the prior convictions.
> On appeal, defendant does not dispute that his prior convictions are
> numerous nor does he contest on appeal (nor did he contest in the
> trial court) the use of the probation report to prove the prior
> convictions.  To the extent defendant suggest prior convictions had
> to be proved beyond a reasonable doubt, he cites only <u>Cunningham</u>
> which, as we have indicated, does not apply to prior convictions.
> (<u>Black</u>, <u>supra</u>, __ Cal.4th __, __, fn. 8 [30].)

8

9

10

11

12

13

> Defendant argues <u>Apprendi</u>, <u>supra</u>, questioned the holding of a
> prior decision that a jury trial was not required for prior
> convictions.  However, <u>Apprendi</u>, <u>supra</u>, 530 U.S. at pages 489-
> 490, merely said it was arguable that a prior decision (<u>Almendarez-
> Torres v. United States</u> (1998) 523 U.S. 224, 226-227 [140
> L.Ed.2d 350]) was incorrectly decided, but <u>Apprendi</u> had no need
> to revisit the matter.  Defendant relies principally on the opinion of
> Justice Thomas, which is not authoritative because it was not the
> majority opinion but a concurring opinion in which only one other
> Justice joined.

14

> We conclude the aggravating factor of numerous prior convictions
> did not require a finding by the jury.

15

16

17

18

19

20

> One valid aggravating factor is sufficient to expose defendant to
> the upper term.  (<u>People v. Cruz</u> (1995) 38 Cal.App.4th 427, 433.)
> Defendant argues that, because the trial court relied not only prior
> convictions but also on aggravating factors for which defendant is
> entitled to a jury trial, we cannot say the trial court would have
> imposed the same sentence based on the single valid factor of prior
> convictions alone.  However, given the sheer number of prior
> convictions in this case, we are satisfied beyond a reasonable doubt
> that the trial court would have imposed the upper term based on
> that valid factor alone.  Therefore, any error in considering other
> factors was harmless.

21

22

> We conclude defendant fails to show any reversible sentencing
> error.

23

(Slip Op. at p. 26-29, 32-36.)

24

     In <u>Apprendi v. New Jersey</u>, 530 U.S 466, 490 (2000), the United States Supreme Court

25

held that "any fact [other than a prior conviction] that increases the penalty for a crime beyond

26

the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable

1   doubt."  Subsequently, in <u>Blakely v. Washington</u>, 542 U.S. 296, 303 (2004) (emphasis in

2   original), the Supreme Court held "that the 'statutory maximum for <u>Apprendi</u> purposes is the

3   maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury*

4   *verdict or admitted by the defendant.*"  Next, in <u>Cunningham v. California</u>, 549 U.S. 270, 293

5   (2007), the Supreme Court found that under California law, the middle, not the upper term, is the

6   relevant "statutory maximum" for <u>Apprendi</u> purposes, and therefore a defendant is entitled to a

7   jury finding before being sentenced to an upper tmer."

8           In this case, the judge cited a few aggravating factors in deciding to sentence Petitioner to

9   an upper term (there were no mitigating factors).  Among the things that the trial judge stated in

10  selecting the upper term was:  (1) Petitioner was in possession of two guns at the time of the

11  commission of the crime; (2) Petitioner showed criminal professionalism and sophistication; and

12  (3) Petitioner's prior convictions.  (<u>See</u> Reporter's Tr. at p. 473.)

13          <u>Blakely</u> and <u>Apprendi</u> sentencing errors are subject to harmless error analysis.  <u>See</u>

14  <u>Washington v. Recuenco</u>, 548 U.S. 212, 221 (2006).  Under California law, only one aggravating

15  factor is necessary to set the upper term as the maximum term.  <u>See</u> <u>People v. Cruz</u>, 38 Cal. App.

16  4th 427, 433 (1995).  Therefore, any <u>Apprendi/Blakely</u> error will be found harmless if it is not

17  prejudicial as to just one of the aggravating factors at issue.  <u>See</u> <u>Butler v. Curry</u>, 528 U.S. 624,

18  648 (9th Cir. 2008).  Accordingly, even if it was in error for the state court to rely on some

19  factors that were not proved by the jury in applying the upper term, any purported error would be

20  harmless under these circumstances in light of Petitioner's numerous prior adult convictions

21  relied upon by the state court in imposing the upper term.   Thus, Petitioner has failed to show

22  that he is entitled to federal habeas relief on the state court's upper term sentence.

23                          VI.  REQUEST FOR AN EVIDENTIARY HEARING

24          Petitioner requests an evidentiary hearing in his traverse.  (<u>See</u> Pet'r's Traverse at p. 6.)

25  A court presented with a request for an evidentiary hearing must first determine whether a factual

26  basis exists in the record to support petitioner's claims, and if not, whether an evidentiary hearing

1    "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v.

2    Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005).  A petitioner requesting an evidentiary hearing

3    must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at

4    1167 (citations omitted).  To show that a claim is "colorable," a petitioner is "required to allege

5    specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th

6    Cir. 1998) (internal quotation marks and citation omitted).  In this case, an evidentiary hearing is

7    not warranted for the reasons stated in supra Part IV.  Petitioner failed to demonstrate that he has

8    a colorable claim for federal habeas relief.  Moreover, the Supreme Court has recently held that

9    federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the

10   state court that adjudicated the claim on the merits" and "that evidence introduced in federal

11   court has no bearing on" such review.  Cullen v. Pinholster, 131 S.Ct. 1388, 1398, 1400 (2011).

12   Thus, his request will be denied.

### VII.  CONCLUSION

13

14           Accordingly, IT IS HEREBY ORDERED that Petitioner's request for an evidentiary

15   hearing is DENIED.

16           For all of the foregoing reasons, IT IS RECOMMENDED that the petition for writ of

17   habeas corpus be DENIED.

18           These findings and recommendations are submitted to the United States District Judge

19   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

20   after being served with these findings and recommendations, any party may file written

21   objections with the court and serve a copy on all parties.  Such a document should be captioned

22   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23   shall be served and filed within seven days after service of the objections.  The parties are

24   advised that failure to file objections within the specified time may waive the right to appeal the

25   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he

26   elects to file, Petitioner may address whether a certificate of appealability should issue in the

1    event he elects to file an appeal from the judgment in this case.  <u>See</u> Rule 11, Federal Rules

2    Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

3    when it enters a final order adverse to the applicant).

4    DATED:  April 9, 2012

5

6

7                                                            TIMOTHY J BOMMER
                                                             UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26